Petition for review allowed December 28, 1972, argued on review
February 6, reversed April 2, 1973

## CLACKAMAS COUNTY, *Respondent, v.*
## HOLMES ET UX, *Petitioners.*

508 P2d 190

*Sidney A. Brockley,* Oregon City, argued the cause for petitioners. With him on the briefs were Jack, Goodwin & Anicker, Oregon City.

*Keith J. Kinsman,* Deputy District Attorney, Oregon City, argued the cause for respondent. On the brief were Roger Rook, District Attorney, and Michael D. Montgomery, Deputy District Attorney, Oregon City.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, TONGUE, HOWELL and BRYSON, Justices.

HOWELL, J.

Plaintiff, Clackamas County, filed this suit to enjoin defendants from completing construction of a chicken processing plant on the grounds that the construction violated county zoning and building code ordinances. The trial court enjoined the defendants from any further construction, and the Court of Appeals affirmed, 11 Or App 1, 501 P2d 333 (1972). We granted review.

The defendants raise two issues on this appeal: (1) the validity of the county zoning ordinance, and (2) whether the defendants acquired a prior nonconforming use and vested right to complete construction of the processing plant.

It is not necessary for us to decide the validity of the zoning ordinance applicable to this case, because we find that defendants acquired a vested right to complete construction prior to the enactment of the ordinance.

The defendants have been engaged in raising

and processing poultry since 1950. In 1959 they were located on property near Milwaukie, Oregon, but because of certain physical limitations of the plant and rezoning of the area, the defendants were required to find a new location. In 1963 they became interested in the subject property in Clackamas County. After determining that the land was unzoned and no zoning was contemplated, the defendants conducted soil tests and received preliminary approval from the Oregon State Sanitary Authority. In February 1965 defendants purchased the property, planning to construct the chicken processing facility. A well was drilled, an irrigation system purchased, electrical power installed, and grass planted. The defendants spent approximately $33,000 toward the development of the property prior to March 1966. The total cost of the completed project would be between $400,000 and $500,000.

In March 1966, the county adopted an interim zoning ordinance, zoning the property Rural Agricultural-Single Family Residential.[1] The zoning prohibited further construction. Defendants applied for a zone change in 1966 and in 1967, but the applications were denied. Thereafter, the defendants ran cattle on the property. In 1970 they started construction of the processing plant, and a stop work order was issued by the county. This suit was then filed to enjoin the defendants from further construction.

■ The defendants contend that they had a nonconforming use prior to the adoption of the zoning ordinance. A nonconforming use is one which lawfully existed prior to the enactment of a zoning ordinance

---

[1] Subsequent zoning ordinances were enacted, but the property continued to be zoned Residential Agricultural.

and which may be maintained after the effective date of the ordinance although it does not comply with the use restrictions applicable to the area. 1 Anderson, American Law of Zoning 306, § 6.01 (1968).

■ The allowance of nonconforming uses applies not only to those actually in existence but also to uses which are in various stages of development when the zoning ordinance is enacted.

> "* * * When the development has reached a certain stage, the property owner is said to have acquired a 'vested right' to continue the development and subsequently to put the use to its intended function. The point in the development of the use at which time the property owner is said to have acquired a 'protected use' or 'vested right' is not easily defined * * *." Comment, 22 SC L Rev 833, 839 (1970).

■ The question of whether the landowner has proceeded far enough with the proposed construction to have acquired a vested right is an issue of fact to be decided on a case-by-case basis. 1 Anderson, supra at 359, § 6.23.

■ The courts and the text writers are agreed that in order for a landowner to have acquired a vested right to proceed with the construction, the commencement of the construction must have been substantial, or substantial costs toward completion of the job must have been incurred. 1 Anderson, supra at 358; 1 Antieau, Municipal Corporation Law 490.18, § 7.53; Note, 49 NC L Rev 197; Comment, 22 SC L Rev 833.

Some courts have attempted to define substantial expenditures on the basis of the ratio of expenses incurred to the total cost of the project. 8 McQuillin, Municipal Corporations (3d ed 1965) 502, § 25.157.

· · The ratio test was applied by the court in *Town of Hempstead v. Lynne,* 32 Misc 2d 312, 222 NYS2d 526 (1961). In *Hempstead* the property owner spent $120,000 for widening a road which provided access to a proposed shopping center. The area was rezoned to residential use. The landowner contended that the amount spent for improvements gave him a vested right to use the premises for a shopping center.

· The court found that the landowner had failed to show the expenditure for the widening of the road was accomplished for the exclusive purpose of accommodating the shopping center, because such widening was equally consistent with using the property for residential purposes. In regard to the substantiality of the amounts expended, the court stated:

> "* * * The test of substantiality in this connection, however, cannot be met by the mere isolated, unrelated recitation of a dollar figure. Substantiality is to be determined, rather, by an assessment of the proportion which the expenditure bears to the total expenditure which would be required to complete the proposed improvement. * * *." *Town of Hempstead v. Lynne,* 222 NYS2d at 531.

▮ The test of whether a landowner has developed his land to the extent that he has acquired a vested right to continue the development should not be based solely on the ratio of expenditures incurred to the total cost of the project. We believe the ratio test should be only one of the factors to be considered. Other factors which should be taken into consideration are the good faith of the landowner, whether or not he had notice of any proposed zoning or amendatory zoning before starting his improvements, the type of expenditures, i.e., whether the expenditures have any

relation to the completed project or could apply to various other uses of the land, the kind of project, the location and ultimate cost. Also, the acts of the landowner should rise beyond mere contemplated use or preparation, such as leveling of land, boring test holes, or preliminary negotiations with contractors or architects. *Washington County v. Stark,* 10 Or App 384, 499 P2d 1337 (1972); *Town of Hempstead v. Lynne,* supra; *Board of Supervisors of Scott County v. Paaske,* 250 Iowa 1293, 98 NW2d 827 (1959); 1 Anderson, supra, § 6.22; Note, 49 NC L Rev 197 (1970).

■ Applying the above tests to the instant case, the record establishes that the defendants acquired a vested right to complete the construction of the plant.

The following evidence was undisputed.

When the defendants began to search for a site for their new plant in 1963, their first and most important consideration was zoning because of their previous experience with zoning at their former plant in Milwaukie. When they were considering the subject property they hired legal counsel to investigate the zoning and were advised by the county planning department that the land was unzoned and there was "no long range planning in that area."

Defendants' second consideration in finding a suitable place was the type of soil and the amount of land adequate to dispose of waste water from the processing plant. In this regard defendants hired a sanitation engineer to conduct land waste disposal surveys which were submitted to and approved by the state sanitary authority. Based on the zoning information and the soil survey, the defendants purchased the property.

Thereafter, they drilled an 843-foot well with a 75 h.p. pump and a 50 h.p. booster pump, which was more than enough for normal farm use, because the well was to be used not only for the irrigation system to dispose of the waste water but also to provide the processing plant with sufficient water.

Special arrangements were made for electrical power and transformers sufficient to meet the total need of both the irrigation system and the processing plant. An agronomy expert from Oregon State University was hired to make a soil survey to determine the type of grass to be planted for the best soil percolation to allow the breakdown of bacteria from the processing plant. Alta fescue grass, which develops deep roots and allows good soil penetration, was planted to prevent waste water from "puddling" on the surface.

It is true that defendants pastured approximately 400 head of cattle on the property after the passage of the zoning ordinance in 1966. However, they did so because they "had to do something with the ground" after the zone change.

Unquestionably, the amount of $33,000 spent by defendants was substantial.

We do not believe that the improvements were as consistent with agricultural use as they were with use as a chicken processing plant. The well and irrigation system were larger than needed, and the electrical power was more than sufficient. The direct telephone line to Portland was not necessary for normal agricultural use, and the alta fescue grass was not the type defendants would have planted for hay or pasture.

The plaintiff argues that defendants' claim to a

vested right to complete the plant must fail because they did not secure a building permit. The defendants had not started construction of any buildings prior to the enactment of the ordinance—all of the $33,000 expenditures were related to the land, as we have mentioned. After enactment of the zoning ordinance, it is obvious that the county would not have granted defendants a permit to construct a chicken processing facility.

■ The plaintiff advances the further argument that the defendants abandoned their projected use of the property by their inactivity from March, 1966, when the zoning ordinance was enacted, to 1970, when defendants started to pour the footings for the plant and were stopped by the plaintiff. We disagree. Defendants, upon the advice of some member of the planning commission, applied for a zone change and did so unsuccessfully on two different occasions during that period. The only reason they placed cattle on the property was to be able to make some economical use of it. Otherwise, the land would have been completely idle.

We conclude that the defendants acted in good faith, the expenses incurred were substantial and directly related to the construction and operation of the processing plant, and therefore defendants acquired a vested right to complete the construction.

Reversed with directions to dismiss plaintiff's complaint and enter a decree in favor of defendants.