Argued and submitted July 28, affirmed August 27, 1986

## UNION OIL COMPANY OF CALIFORNIA,
*Petitioner,*

*v.*

## BOARD OF COUNTY COMMISSIONERS OF CLACKAMAS COUNTY,
*Respondent.*

(LUBA 86-007; CA A40409)

724 P2d 341

Barry L. Adamson, Portland, argued the cause for petitioner. With him on the brief was Williams, Fredrickson, Stark, Norville & Weisensee, P.C., Portland.

Michael E. Judd, Chief Assistant County Counsel, Oregon

City, argued the cause for respondent. With him on the brief was Clackamas County Counsel, Oregon City.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioner seeks review of LUBA's affirmance of Clackamas County's refusal to issue a building permit for the construction of a service station. Petitioner argues that the county and LUBA erred by concluding that it did not enjoy a vested right to build the station. We affirm.

Petitioner purchased the property it intended to use as the station site in 1973. Later that year it applied for, and the county issued, a building permit for the station. Before petitioner began construction, the United States government imposed restrictions on the allocation of motor vehicle fuel. As a result, petitioner could not obtain fuel to sell at the station. It did not begin actual construction, and the permit expired. In 1981, the President of the United States issued an executive order terminating the fuel allocation restrictions. In 1973, service stations were a permitted use in the area where petitioner's property is located. In 1980, the county rezoned the area, and service stations are no longer permitted. In 1981 and again in 1985, petitioner applied for a building permit for the station, contending that it had a vested right to undertake the construction and use. The county denied both applications, and the later denial is the subject of this proceeding.

The county found that petitioner had not made substantial expenditures in connection with the service station project during the time when the use was permitted and that a service station in the area would "exacerbate existing traffic problems" and would therefore be an inappropriate use in the area. The county concluded, on the basis of those determinations, that petitioner did not have a vested right to proceed with the project. Petitioner's principal contentions before LUBA and before us are that the county erred by not including the purchase price of the property in its calculation of petitioner's expenditures and its determination of whether they were substantial, and by considering only two of the nine (by petitioner's count) factors which *Clackamas Co. v. Holmes,* 265 Or 193, 508 P2d 190 (1973), and subsequent cases hold to be relevant in determining whether a vested right exists.

Because much of the dispute turns on the parties' different understandings of what the court said in *Clackamas Co. v. Holmes, supra,* we will discuss that case in some detail as a prologue to our consideration of petitioner's arguments. In

*Holmes,* the county brought suit to enjoin the defendants from completing construction of a chicken processing plant on property which they had purchased in 1965 and which the county had rezoned as "residential agricultural" in 1966. Before the rezoning, the defendants had spent approximately $33,000 to prepare the property for use as a processing plant. *See* n 2, *infra.* They argued that they had a vested right to complete the project. The court articulated these tests for adjudicating vested rights claims:

> "The courts and the text writers are agreed that in order for a landowner to have acquired a vested right to proceed with the construction, the commencement of the construction must have been substantial, or substantial costs toward completion of the job must have been incurred. * * *

> "Some courts have attempted to define substantial expenditures on the basis of the ratio of expenses incurred to the total cost of the project. * * *

> "The test of whether a landowner has developed his land to the extent that he has acquired a vested right to continue the development should not be based solely on the ratio of expenditures incurred to the total cost of the project. We believe the ratio test should be only one of the factors to be considered. Other factors which should be taken into consideration are the good faith of the landowner, whether or not he had notice of any proposed zoning or amendatory zoning before starting his improvements, the type of expenditures, i.e., whether the expenditures have any relation to the completed project or could apply to various other uses of the land, the kind of project, the location and ultimate cost. Also, the acts of the landowner should rise beyond mere contemplated use or preparation, such as leveling of land, boring test holes, or preliminary negotiations with contractors or architects. * * *" 265 Or at 197-99. (Citations omitted.)

The court then applied those tests to the facts before it and concluded, *inter alia:*

> "Unquestionably, the amount of $33,000 spent by defendants was substantial.

> "We do not believe that the improvements were as consistent with agricultural use as they were with use as a chicken processing plant. * * *

> "* * * * *

> "We conclude that the defendants acted in good faith, the

expenses incurred were substantial and directly related to the construction and operation of the processing plant, and therefore defendants acquired a vested right to complete the construction." 265 Or at 200-01.

In the present case, petitioner had spent $128,678 in connection with the property before it was rezoned, including the $105,192 purchase price. The county concluded that only $5,778 of petitioner's expenditures could be included in the "substantial expenditure" calculation, because the remaining amounts were not "directly related to use of the property as a service station." Petitioner is of the view that all of its expenditures must be included in the calculation. The determinative issue is whether the purchase price must be counted.[1]

Petitioner argues that *none* of its expenditures can properly be excluded from the "substantiality" calculation on the basis that they are not related to the specific project for which the vested right is claimed. It contends that relationship to the project is irrelevant to the *substantiality* of expenditures test, because *Clackamas Co. v. Holmes, supra,* makes relatedness a relevant consideration in connection with the *type* of expenditure test. Therefore, petitioner maintains, the effect of making relatedness part of the substantiality inquiry would be to blur the two tests and render the type of expenditure test superfluous. Petitioner asserts that, for purposes of the substantiality test, only the gross *amount* of expenditures is relevant, and the *purpose* of the expenditures can be considered only in connection with the type of expenditure test. According to petitioner, our decisions in *Cook v. Clackamas County,* 50 Or App 75, 622 P2d 1107, *rev den* 290 Or 853 (1981), and *Milcrest Corp. v. Clackamas County,* 59 Or App 177, 650 P2d 963 (1982), depart from *Holmes* insofar as they

---

[1] The total cost to complete the project is a matter of some disagreement. The county and petitioner place the amount at slightly more than $400,000. LUBA rejected that figure, because it includes the purchase price in the total completion cost; in LUBA's view, the purchase price is not properly includable in either the expenditure or the completion cost side of the equation. LUBA concluded that the completion cost was $275,000. In either event, we conclude that petitioner cannot satisfy the "substantial expenditure" test unless, as it maintains, the purchase price can be considered as an expenditure for purposes of the test. Petitioner provides us with no sufficient basis to hold as a matter of law that the county erred by including only $5,778 of the remaining amounts in the substantial expenditure calculation. As LUBA's opinion notes, $5,778 bears a ratio of approximately 1 to 47 to $275,000.

treat the relationship of an expenditure to the specific use as being material to the substantiality test.

The problem with petitioner's argument is that it takes each of the tests or factors enumerated in *Holmes* as being wholly independent of the others. Although *Holmes* contains some isolated language which can be read as supporting that view, the opinion (like all other judicial opinions) must be read as a whole and must be read with the understanding that the court intended it to make sense. We do not think that the court intended in *Holmes* to create two operationally unrelated tests for expenditures, and it is reasonably clear that the court did not share petitioner's contrary understanding. It concluded that "the expenses incurred *were substantial and directly related* to [the project], and therefore defendants acquired a vested right." 265 Or at 201. (Emphasis supplied.) More fundamentally, petitioner's view of what the court meant in *Holmes* is at odds with the concept of vested rights. A vested right pertains to *a use;* there is no reasonable basis for allowing an expenditure that has no relationship to that use to be considered in determining whether a vested right to continue the use has been acquired.

Petitioner's more colorable argument is that the county and LUBA insist upon a more direct relationship between the expenditures and the service station use than the Supreme Court's and our cases contemplate and that they effectively disregarded expenditures which were clearly related to the project but which conceivably could also serve other uses. Petitioner argues specifically:

"* * * [A]n expenditure is 'related' to a 'completed project' if it is made in contemplation of, and in reliance on, a particular development, and if that development has been planned and pursued to the point that it can be said that the landowner spent the funds with a particular project in mind and in reliance on being able to develop the property as such. * * *

"* * * * *

"* * * [W]hen a landowner demonstrates that (1) he would not have purchased the property except for the particular proposed use, (2) the only profitable use is that use, and (3) the property's highest and best use is the proposed use, then the acquisition cost of the land must be included as an appropriate 'related' expenditure. * * *

"The key inquiries in such cases are: (1) was the property purchased with a *particular use* in mind, and (2) was the purchase made in reliance on existing zoning? In this case, Union has demonstrated, *without factual contradiction in the record,* that it purchased the property in question exclusively for use as (and only as) a service station, and that it did so in reliance on the then-existing zoning. To exclude the acquisition cost of the property when those conditions exist is error." (Emphasis petitioner's.)

Whether the purchase price of the land on which a use is contemplated can be included in the substantial expenditure calculus, and whether the answer is affected by the motive for purchasing the land, are questions that have not been decided by Oregon appellate courts. In *Clackamas Co. v. Holmes, supra,* the court noted that the defendants had specifically chosen the property because of its zoning, the absence of any anticipated change in the zoning and characteristics of the property which made it suitable for the planned use. However, that discussion in *Holmes* pertained to whether the defendants acted in good faith and did not bear on the substantiality of their expenditures.[2]

■      The county and LUBA rely on 4 Rathkopf, *The Law of Zoning and Planning,* § 50.03(3)(c) (1986), for the proposition that land acquisition costs are not expenditures that enter the vested rights calculation, because land remains usable, albeit perhaps less valuable, after the new restriction is imposed. There is a more fundamental reason for not including the purchase price of the property in the substantiality determination: the existence of a vested right to use property in a particular manner presupposes that one *has* control of the property with the right to use it. The term "vested right" in this context does not pertain to an undifferentiated prerogative *to conduct an activity;* it relates to a prerogative *to use*

---

[2] Although it is not made certain in either the Supreme Court's opinion in *Holmes* or our opinion in that case whether the purchase price was included in computing the defendant's expenditures, the almost certain answer is that it was not. We said:

   "* * * [W]hen the interim zoning went into effect, the defendants had already expended approximately $33,000 *on plans and actual improvements." Clackamas County v. Holmes,* 11 Or App 1, 5, 501 P2d 333 (1972), *rev'd* 265 Or 193, 508 P2d 190 (1973). (Emphasis supplied.)

However, the opinions offer no basis for believing that including the purchase price was raised as an issue.

*one's land* for the activity. The cost of acquiring the land is not a determinant of whether the owner has made substantial expenditures toward the commencement of the planned activity on the land.[3] We reject petitioner's arguments that the county or LUBA erred by excluding the property purchase price from the substantiality calculation or committed reversible error in any other respect in connection with the application of the substantiality test.

■     Petitioner contends that the county's decision should be remanded, because it applied only two of the *Holmes* tests—substantiality and appropriateness of the use to the location—and disregarded the other factors that *Holmes* holds to be germane to a vested rights determination. Petitioner asserts that, if local governments may selectively choose which of the factors to apply, they can prevent landowners from knowing what tests will be applied to their assertion of vested rights and can manipulatively emphasize factors which militate for or against the finding of a right, regardless of how the subordinated factors might affect the picture. The county argues, and LUBA agreed, that the vested rights determination is a case-by-case factual exercise. *See Clackamas Co. v. Holmes, supra,* 265 Or at 197. The county contends that not all of the *Holmes* factors are relevant in every case and that it cannot be known in advance which factors will or will not be relevant to particular cases. The county also appears to argue that local governments do have the prerogative of giving greater weight to some factors than to others, as the circumstances of specific cases may indicate or dictate. Whatever abstract merit there may be to petitioner's argument, petitioner does not reduce it to particulars. It may be that a county's failure to consider or give weight to a specific factor in a specific case could be a basis for remand but only if the proponent or opponent of the vested right at least demonstrates that the county's failure to consider or give proper weight to the factor might have affected the vested rights determination. Petitioner makes no such demonstration.

■     Petitioner makes a number of other arguments, only

---

[3] It is arguable that any portion of the purchase price which constitutes a "premium" directly related to the use can be considered an expenditure for purposes of the substantiality test. Petitioner argues that it did pay a premium here and assigns error to LUBA's rejection of its argument. We also reject it. LUBA correctly concluded that petitioner failed to prove the existence or the amount of the premium.

one of which calls for discussion. It contends that it was effectively prevented by the fuel allocation restrictions from proceeding with construction and that it therefore comes within the doctrine, derived from out-of-state cases and texts, that a nonconforming use or a vested right cannot be lost due to an "involuntary restriction." Petitioner concludes:

"* * * [A]n appropriate remedy would be to grant the owner a time period to complete construction (and thus expend 'substantial' funds 'related to' the project) equivalent to the period of disability * * *."

There was no involuntary restriction on petitioner's construction of a service station between 1973 and 1980. It might have been unsound business practice to build a service station which could receive no gasoline to sell, but petitioner was under no extrinsically imposed restriction against doing so; the restriction pertained to the acquisition of fuel, not the erection of a building. Petitioner states:

"The County takes no issue with the evidence, but instead intimates that the federal government's gasoline allocation regulations did not actually prevent Union from concluding construction of the service station. In an abstract sense, that is correct; Union could have invested over $400,000 to construct a service station, and then board it up for seven years! Yet that suggestion is so irrational, and would have amounted to such a futile and economically wasteful act, that any further response to the County's suggestion seems entirely unnecessary. Certainly one understands the point. Indeed, any decision by Union to have pursued construction under the circumstances would have been extremely poor business judgment which few (if any) companies would ever entertain." (Footnotes omitted.)

Petitioner misses the point. The restriction had nothing to do with the use for which the vested right is claimed, except that it led petitioner to the very rational and very voluntary decision not to proceed with that use to the point necessary to acquire a vested right. In effect, petitioner's argument is that it is entitled to acquire a vested right *now* because it *chose*—however prudently—not to do so before its property was rezoned. We reject that argument.[4]

---

[4] The basis for our rejection makes it unnecessary to decide whether to adopt or how to apply the "involuntary restriction" principle.

Affirmed.