Argued and submitted December 16, 2010, reversed in part, affirmed in part, and remanded to modify the writ of review judgment consistently with this opinion September 28, 2011, petition for review denied February 16, 2012 (351 Or 586)

FRIENDS OF POLK COUNTY,
an Oregon nonprofit corporation,
and Gloria Bennett,
individually,
*Petitioners-Appellants,*

*and*

Gerald BENNETT,
individually,
*Petitioner below,*

*and*

Eileen Marie Cadle MARTINSON,
*Petitioner-Respondent,*

*v.*

Robert W. OLIVER,
in his official capacity as Polk County Hearings Officer,
*Respondent-Respondent.*

Polk County Circuit Court
09P10349; A144372

264 P3d 165

Sean T. Malone argued the cause for appellants. With him on the briefs was Ralph O. Bloemers and Crag Law Center.

Stephen T. Janik argued the cause for respondent Eileen Marie Cadle Martinson. With him on the brief were Steven P. Hultberg and Ball Janik LLP.

No appearance for respondent Robert W. Oliver.

John R. Kroger, Attorney General, David B. Thompson, Interim Solicitor General, and Stephanie L. Striffler, Senior Assistant Attorney General, filed the brief *amicus curiae* for the State of Oregon.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Landau, Judge pro tempore.

SERCOMBE, J.

**SERCOMBE, J.**

Petitioners Friends of Polk County and Gloria Bennett (petitioners) appeal a writ of review judgment.[1] The judgment modified a decision of a Polk County hearings officer that determined that claimant Martinson (claimant) had a vested right to develop a 30-acre portion of a 137-acre tract under section 5(3) of Ballot Measure 49 (2007), but did not have a vested right to develop the entire tract. The circuit court concluded that claimant had a right under section 5(3) to develop not only the 30-acre subarea for commercial uses but also the entire tract for commercial and residential uses. Petitioners appeal and contend that the court misconstrued the applicable law and erred in allowing both of those development rights. We conclude that the court did not err in affirming the hearings officer's decision on the 30-acre subarea, but that it did err in allowing development of the entire tract to proceed. Accordingly, we affirm the judgment in part, reverse the judgment in other parts, and remand for further proceedings.

This case concerns whether claimant's actions were sufficient to vest rights to develop all or part of her property under section 5(3) of Measure 49. Some of the issues in this appeal were decided in *Friends of Yamhill County v. Board of Commissioners*, 237 Or App 149, 238 P3d 1016 (2010), *rev allowed*, 349 Or 602 (2011), and that opinion more fully describes the legal context for this case. To summarize, Measure 49 was adopted by the voters in 2007. It replaced Measure 37, an initiative measure adopted in 2004 that required state and local governments to compensate property owners for the reduced value of property caused by a post-acquisition regulation. That compensation could be by either paying the amount of the reduction in value or by deciding to "modify, remove, or not to apply the land use regulation * * * to allow the owner to use the property for a use permitted at the time the owner acquired the property." *Former* ORS 197.352(8) (2005), *amended by* Or Laws 2007, ch 424,

---

[1] Appellants, together with Gerald Bennett, were petitioners in one of the two consolidated writ of review proceedings below and opposed the requested vested rights determination by the county. We refer to appellants or appellants together with Gerald Bennett as "petitioners," depending upon the context.

§ 4, *renumbered as* ORS 195.305 (2007). The latter option became known as a "Measure 37 waiver."

Measure 49 limited the remedies for past and future claims for compensation for the lost fair market value of downzoned property. For past Measure 37 claims, instead of a broad waiver of regulations, section 5 of Measure 49 allowed the right to develop the affected property with a specified number of residential dwellings, depending upon the location of the property. Alternatively, section 5(3) allowed development

"as provided in * * * [a] waiver issued before [December 6, 2007,] to the extent that the claimant's use of the property complies with the waiver and the claimant has a common law vested right on [December 6, 2007,] to complete and continue the use described in the waiver."

We have issued a number of recent opinions describing and applying the factors used to determine the existence of a common-law vested right under section 5(3). As we explained in *Kleikamp v. Board of County Commissioners*, 240 Or App 57, 60, 246 P3d 56 (2010),

"[i]n *Friends of Yamhill County*, we examined the meaning of the term 'common law vested right' as used in section 5(3) of Measure 49. In doing so, we surveyed Oregon case law, including the Supreme Court's decision in *Clackamas Co. v. Holmes*, 265 Or 193, 198-99, 508 P2d 190 (1973), in which the court established factors for determining whether a common law vested right exists in a particular case, including (1) the ratio of development expenditures to the total project cost; (2) whether the landowner's expenditures were made in good faith; (3) whether the expenditures are related to the completed project or could apply to other uses of the property; and (4) the nature, location, and ultimate cost of the project."

In this case, claimant applied for a decision from the county on the extent of her vested rights under section 5(3). She established the following facts in the county proceedings. Since 1959, claimant has partially owned a tract of property in Polk County, west of the City of Dallas, that is roughly rectangular in shape. Highway 22 (Willamina-Salem Highway) cuts through the northeast corner of the property, dividing it

into a 137-acre parcel to the southwest and a seven-acre parcel to the northeast. The 137-acre parcel is bounded by Highway 223 (Dallas-Rickreall Highway) on its southern border.

Claimant obtained Measure 37 waivers from Polk County and the State of Oregon in 2005 for the 137-acre parcel. The parcel was unzoned at the time of claimant's acquisition and after that time was zoned for farm uses. That zoning precludes most residential and commercial uses of the property. The county waiver eliminated the application of the farm use zoning and other regulations but did not specify any permitted land uses. The state waiver did not apply various laws "to * * * claimant['s] development of the property for residential and commercial uses."

Having secured the waivers, claimant planned to develop the 137-acre property in phases. The first phase was an approximately 30-acre subarea located in the southeast and east parts of the tract, including a portion of the frontage on Highway 22. That subarea was planned for retail commercial uses, including automobile sales. The later phases included areas for single-family and multi-family residences, office uses, and mixed office and light industrial uses.

Planning and engineering for the development began in 2006 and continued through 2007. Claimant engaged consultants, who provided project management, planning and design, and engineering services that were needed primarily to develop the first phase of the development. During November and early December 2007, claimant constructed a graveled roadbed for a road that bordered the first phase of the development and intersected with Highway 223 to the south. By December 6, 2007, the effective date of Measure 49, claimant claimed that she had invested $1,927,648 toward completion of the entire development, of which $1,651,448 was allocable to the first phase. In the county proceedings, claimant estimated that the cost of building phase one, including streets, utilities, and building shells, was $18,304,839.

Part of that claimed investment was for legal costs and compensation lost as part of a settlement of an eminent domain case. In 2005, the state filed a condemnation proceeding to acquire additional rights-of-way along the Highway 22

frontage of both parcels owned by claimant and to eliminate any access rights to the highway from those parcels. The complaint was amended later to reserve a potential access to Highway 223 from the 137-acre parcel. The parties settled that case in a June 2007 agreement. Under the terms of the settlement agreement, in exchange for the property conveyances, the state paid claimant $225,000 with interest. The state also agreed to expedite approval of an approach road permit for the intersection of the first-phase road with Highway 223. That permit would accommodate only the traffic generated by the first phase of the development. Claimant contended that she settled the condemnation case for less than she would have received for the takings in order to obtain faster and more certain processing of the approach road permit by the state. She estimated that this lost value was $910,000, of which $680,000 was allocable to phase one of the development.

In 2008, following the adoption of Measure 49, claimant requested a county determination of whether her rights to develop the entire 137-acre tract had vested. After applying the vesting factors identified in *Holmes*, the community development director concluded that evidence of the nature and cost of the entire 137-acre development was necessary to determine whether claimant had a vested right to develop the entire tract. That evidence was lacking, so the director ruled that claimant failed in her proof. However, the director noted that he "would have determined (under *Holmes*) that a 30 acre commercial development was vested on a 30 acre portion of the subject property," but claimant asked for a determination on the entire property and the director lacked the authority to modify the application.

Claimant appealed to the county hearings officer. After a hearing, the hearings officer issued an opinion concluding that an applicant could modify the application to seek vesting for a portion of the tract, so that claimant was entitled to a vested rights determination for the 30-acre subarea. He agreed with the director that "[i]t is not possible to apply a ratio test to the full 137 acres. Indeed, there is much uncertainty as to precisely what is planned outside the lower 30 acres in Phase 1." However, applying the *Holmes* factors, the hearings officer determined that claimant established a

vested right to complete the project undertaken as phase one of the development.

The parties separately petitioned for writs of review. As relevant here, ORS 34.040(1)(c) and (d) allow a writ of review when an officer or tribunal "[m]ade a finding or order not supported by substantial evidence in the whole record" or "[i]mproperly construed the applicable law." Petitioners sought to annul the vested rights determination for the 30-acre subarea on both of those grounds. For her part, claimant sought review to reverse the determination that she had no vested right to develop the entire 137-acre tract. She claimed that the determination was not supported by substantial evidence and was made based on an improper construction of applicable law. The court agreed with claimant, concluding that a sufficient showing had been made to vest rights to complete and continue development of the entire tract, as well as development of the 30-acre subarea, and entered a judgment to that effect.

Petitioners appeal. They contend that the reviewing court erred in finding any vested rights to develop the tract or any part of it. Petitioners argue that claimant's conduct was "mere preparation" for a land use and that no vested right to improve property can occur prior to the issuance of a building permit and the commencement of construction. In addition, petitioners assert that claimant failed to satisfy the *Holmes* criteria for vesting the right to develop the entire parcel or the 30-acre portion of it because (1) there was a lack of good faith in claimant's race to construct before the effective date of Measure 49; (2) the roadway development occurred with notice of a change of law; (3) the road expenditures were adaptable for use by the three homes allowed by Measure 49; and (4) the development conflicts with nearby resource uses.

Petitioners further assert that claimant failed to prove the total project cost for the entire development, and thus inhibited the necessary consideration of the *Holmes* expenditure ratio factor. Moreover, petitioners contend, claimant failed to show sufficient progress under that test to vest rights to develop the 30-acre subarea. Finally, petitioners claim that the uses allowed under the vested rights determination for the entire parcel exceeded the uses permitted in

the Measure 37 waivers because they also allowed light industrial uses.[2] *Amicus curiae* State of Oregon supports petitioners' contention that claimant failed to prove the nature of the development of the entire parcel, much less its cost, and could not obtain a vesting of an unknown use. Moreover, the state argues that the settled condemnation claim for lost access value is not an expenditure for purposes of the expenditure ratio test under *Holmes* and that claimant failed to satisfy that test with respect to either parcel.

Claimant disputes those contentions and argues that (1) the acquisition of building permits are not necessary to vest development rights; (2) the incurred expenses—including the foregone compensation in the condemnation case—were substantial and were sufficient, together with the other vesting factors, to vest rights for the entire tract as well as the smaller parcel; and (3) petitioners' contention about the light industrial use vesting was not preserved.

We review the circuit court's determinations for errors of law, *i.e.*, whether the court correctly applied ORS 34.040(1)(c) and (d). *Friends of Yamhill County*, 237 Or App at 158-59. Some of petitioners' contentions—that a section 5(3) vesting requires the issuance of building permits and the commencement of construction and that actions taken to vest are not undertaken in good faith if they occurred after Measure 49 was either referred to the ballot or adopted—were rejected in *Id.* at 168, 176. *See also DLCD v. Clatsop County (A144073)*, 244 Or App 33, 260 P3d 575 (2011). There is no need to revisit those holdings.

At the same time, petitioners' core assertion—that a vested rights determination requires an evaluation of the progress of land development measured by the ratio of

---

[2] Petitioners do not contend on appeal that the reviewing court erred in approving vesting for the 30-acre subarea—as opposed to the entire 137-acre tract that was the subject of the waivers—because section 5(3) only allows vesting "to complete and continue the use described in the waiver." The use described in the state waiver was for commercial and residential development of the entire tract. Instead, petitioners only argue that the scope of the allowed vesting for the entire tract exceeded the scope of the waivers because light industrial uses were not allowed in the waivers. Consequently, we need not determine whether a partial vesting for less than the entire use "described in the waiver" is permitted by section 5(3).

incurred expenditures to the total project cost—was accepted in *Friends of Yamhill County*. In that case, we reasoned that

> "[t]he above cases establish that all of the *Holmes* factors are material to the determination of a vested right and that they are interrelated. The inquiry is equitable in nature, requiring an evaluation of the progress of land development at the time of the downzoning, either in terms of a substantial start of construction of the vested use itself or substantial expenditures toward that particular end (as distinguished from expenditures for an otherwise lawful use of the property). * * * The degree of construction or expenditures necessary to be substantial depends upon the proportion of those efforts or costs to the total project buildout or budget. Given the interrelatedness of the factors, the degree of construction or expenditure necessary to be substantial may be affected by the other *Holmes* factors (good or bad faith of landowner, size of project, the location of project with respect to other uses) and other equities, including the past conduct of the zoning authorities. Similarly, the degree to which a particular factor is material to a determination of vested rights is affected by the strength or weakness of the equities that result from the application of the remaining factors."

237 Or App at 165.

In the context of a vested rights determination under section 5(3), we concluded in *Friends of Yamhill County* that "the text and context of section 5(3) of Measure 49 makes a determination of the nature of the ultimate project (the location, extent, and type of * * * development and its costs) and an assessment of the expenditure ratio particularly material to a vested rights decision under the measure." *Id.* at 177. Thus, an assessment of whether development rights have vested under section 5(3) cannot occur without a determination of both the nature and the costs of the intended development and an assessment of whether sufficient costs or expenditures have been incurred to qualify the costs as "substantial." Here, the county determined that claimant presented insufficient evidence on the nature of the buildout of the 107-acre portion of the property and its costs. Therefore, the reviewing court erred in overturning the county's determination that claimant did not prove a vested right to complete development of the entire parcel. That conclusion is

consistent with several of our cases that require proof of project development costs in order to make a vested rights determination under section 5(3). *See, e.g., Fischer v. Benton County,* 244 Or App 166, 260 P3d 647 (2011); *DLCD v. Clatsop County (A143964),* 244 Or App 27, 260 P3d 580 (2011); *Biggerstaff v. Board of County Commissioners,* 240 Or App 46, 245 P3d 688 (2010).

Petitioners' remaining contentions are that claimant did not make sufficient expenditures to vest a right to develop the 30-acre subarea and that the county and court misconstrued applicable law in granting and affirming that right. Petitioners rely on many of the same arguments asserted with respect to vesting of the entire parcel. As distinguished from the proof related to the larger tract, however, claimant did establish the expected costs of development of the subarea—the denominator of the expenditure ratio factor. The remaining issues concern the numerator of that ratio—whether certain costs or values were sufficiently proven and whether they directly relate to development of the subarea so as to include them in the ratio.[3]

In the county proceedings, claimant argued that she had incurred costs or made expenditures to develop the 30-acre subarea in the amount of $1,651,448 and that that amount should be used as the numerator in the calculation of the expenditure ratio for purposes of the *Holmes* vesting analysis. That amount included expenditures for a development consultant, traffic studies, planning and engineering services, water provision, soil testing, and the construction of the road. It also included claimed costs of $146,218 for "access acquisition," $183,144 for "legal," and $680,000 for "access value."

The "access acquisition" costs were for the entire costs of defending the condemnation case (legal fees, appraiser fees, filing fees, and court reporting costs). Petitioners objected that those costs should not count because

---

[3] We reject without further discussion petitioners' contention that the cost of the road construction should not be considered in determining whether the expenditures were substantial because the roadway could be adapted to serve the residential development otherwise allowed under Measure 49. The design and size of the road were engineered to serve a large commercial development.

they were unrelated to development of the 30-acre subarea. The claimed "legal" costs purportedly are the attorney fees related to the land development process. Petitioners disputed the inclusion of those costs in the expenditure ratio numerator because the legal services related to the 30-acre development were not identified and segregated.

As noted, the "access value" costs were a part of a claimed diminution in value of the 137-acre parcel that resulted from the loss of access to Highway 22 that was acquired in the condemnation case. Claimant contended that compensation for this loss of value was bargained away in the settlement of the case in order to obtain a better, quicker, and more certain approach permit to Highway 223 for the project. At the vesting hearing, claimant presented an appraisal that she had commissioned for use in the condemnation case. The appraiser concluded that the property with the access to Highway 22 was worth $910,000 more than the property without that access but with a potential Highway 223 access. Assuming that this value was given up as part of the condemnation settlement, in exchange for the payment of money and favorable treatment of the approach permit, the appraiser further opined that the share of that bargained-for exchange attributable to the 30-acre subarea was $680,000 because that part of the property was more particularly benefitted by the acquired access.[4]

Petitioners argued that the cost of securing the new access to Highway 223, the "access acquisition" and "access value" costs, was only a substitution for the value of the conveyed old access to Highway 22; the value of that access, in turn, was part of the original acquisition cost of the entire tract; and property acquisition costs are not expenditures

--------

[4] Specifically, the appraiser stated in a letter to the planning director that was part of the record:

"On February 14, 2008, I sent you a letter which indicated that [claimant] gave up the potential of recovering compensation of $910,000.00 to obtain a single permitted access to their 137 acre parcel (the remainder southerly parcel). As [claimant is] now requesting a vesting determination as to the 30 acre first phase of [her] commercial development on that property, an allocation of that amount to the 30 acres and the remaining 107 acres would be appropriate. Recognizing the uncertainty of the use of the remaining 107 acres, I would allocate $680,000 to the 30 acre first phase of [claimant's] commercial development and $230,000 to the remaining 107 acres."

that can be included in an expenditure ratio under *Union Oil Co. v. Board of Co. Comm. of Clack. Co.*, 81 Or App 1, 724 P2d 341 (1986). In that case, the issue was whether a property owner had made sufficient expenditures to vest a right to use the property for a gasoline station. We held that "[t]he cost of acquiring the land is not a determinant of whether the owner has made substantial expenditures toward the commencement of the planned activity on the land." *Id.* at 8.

In this case, the hearings officer made legal determinations on the expenditure ratio test that, in turn, were adopted by the reviewing court. The court also concluded that the evidentiary findings made by the hearings officer were supported by substantial evidence. The judgment recites that the hearings officer's decision on the 30-acre subarea was affirmed because his "ruling properly applied the applicable law and is supported by substantial evidence."

The hearings officer determined that the $183,144 in legal costs for the development should be counted in full because petitioners did not specify how any allocation to the 30-acre project could be made. Petitioners do not quibble with that conclusion in their appeal. The hearings officer further ruled that the "access value" and "access acquisition" costs could be included in the ratio "at least in part." The hearings officer continued:

> "Friends of Polk County equate costs of acquisition of the land itself with the cost of acquiring, and value of, access. The [hearings officer] does not agree that the costs of acquiring access must be considered as the cost of acquiring land, for purposes of the ratio computation. It would be possible to have land without usable access even for residential or agricultural use. *Union Oil* is not [on] point. Applicants in this matter already own the land. Acquiring appropriate access is another matter.

> "In his letter dated February 6, 2009, [claimant's appraiser] allocated $680,000 of the access value as attributable to the 30 acres, and $230,000 to the remainder of the tract. There were arguments that access acquisition ought to be stricken entirely from consideration, but opponents offered no evidence that this allocation is incorrect. Moreover, the [hearings officer] remains unconvinced that, under authorities cited in this matter, access acquisition

costs cannot be included in computing the costs of an improvement.

"Summarizing, despite much argument and assertions, the [hearings officer] does not find convincing any evidence that mandates acceptance of the proposed revision of expenditures as set out in Friends of Polk County's Exhibit 1; and, he finds more convincing the expenditures set out on page 4 of Applicants' Memorandum of February 6, 2009. Given the total estimated project costs attributed to the 30 acres, ($1,651,448.45) and the total projected development cost for the 30 acres ($18,304,839), the ratio expounded in *Holmes* would yield a percentage of 9.0, considerably exceeding the percentage found acceptable in that case. Under the Director's computation in his determination, counting development and construction costs alone, expenditures would total $1,087,648.45, yielding a 5.6 percent expenditure ratio. This is somewhat less than the 6.6 percent held sufficient in *Holmes*. However, *Holmes* nowhere stated that the percentage it found acceptable constituted an absolute minimum as a test of substantiality. On the contrary, the Court stated that 'the test . . . should not be based solely on the ratio of expenditures incurred to the total cost of the project. We believe the ratio test should be only one of the factors to be considered.' 508 P2d at 192-3.

"\* \* \* \* \*

"Considering the totality of the evidence in the Record of this proceeding, the [hearings officer] finds that the Applicant has established a vested right to complete the project undertaken as Phase I on the lower 30 acres of the subject tract."

The county (and the reviewing court) did not misconstrue the applicable law in reaching those conclusions. First, whatever costs were expended toward acquisition of an access that was specific to the 30-acre development are properly included in the expenditure ratio calculation. *Holmes* requires that the incurred expenditures be "substantial and directly related to the construction and operation of" the intended use. 265 Or at 201. The Highway 223 access and approach permit that resulted from the defense of the condemnation case and its settlement specifically accommodates only the traffic generated by the phase one development. It follows that the costs expended or value conveyed to obtain

that permit are part of the 30-acre project investment and should be included in the expenditure ratio numerator.

Second, those costs are not disqualified because they are expenditures of the proceeds of the sale (by the condemnation settlement) of part of the property (the right of way and Highway 22 access) originally acquired by claimant. Usually, the purchase price for property generally is not sufficiently "related to" a specific development since property can be used for any number of things, and vesting pertains to actions related to the use of property, which presupposes its ownership. As we observed in *Union Oil Co.*,

> "[t]he county and LUBA [advance] the proposition that land acquisition costs are not expenditures that enter the vested rights calculation, because land remains usable, albeit perhaps less valuable, after the new restriction is imposed. There is a more fundamental reason for not including the purchase price of the property in the substantiality determination: the existence of a vested right to use property in a particular manner presupposes that one *has* control of the property with the right to use it. The term 'vested right' in this context does not pertain to an undifferentiated prerogative *to conduct an activity*; it relates to a prerogative *to use one's land* for the activity. The cost of acquiring the land is not a determinant of whether the owner has made substantial expenditures toward the commencement of the planned activity on the land.[3]
>
> _____
>
> "[3] It is arguable that any portion of the purchase price which constitutes a 'premium' directly related to the use can be considered an expenditure for purposes of the substantiality test."

81 Or App at 7-8 (emphasis in original).

But where the expenditure is not for the original purchase price of the property but instead for a later-acquired property interest "directly related to the use," the nexus test is met. It matters little that the expenditure is from proceeds from the sale of property that will not be used for the intended use. Claimant could have sold part of her original holding and used the proceeds to purchase lumber,

concrete, pipes, or access permits to be used in the development of the remaining land, all of which would be relevant expenditures in the substantiality test.

Finally, the hearings officer was correct in treating the necessary degree of the expenditure ratio as a function of the equities of the case and the strength or weakness of the application of other *Holmes* factors. As we said in *Friends of Yamhill County*, "the degree of construction or expenditure necessary to be substantial may be affected by the other *Holmes* factors (good or bad faith of landowner, size of project, the location of project with respect to other uses) and other equities." 237 Or App at 165. Petitioners asserted that the $680,000 allocation to the 30-acre subarea of the claimed $910,000 valuation of the approach permit rights acquired in the condemnation settlement for the entire 137-acre tract was disproportionate and without evidentiary foundation. We need not decide whether petitioners' assertion is correct. That is so because the hearings officer found a 5.6 percent expenditure ratio without the $680,000 cost to be sufficient. There is no question that a substantial benefit to the 30-acre development was obtained in the condemnation settlement and that there is equity in allowing claimant the benefit of that bargain. That equity justifies a conclusion of substantiality based on an expenditure ratio that is lower than the one found sufficient in *Holmes*.

Thus, the reviewing court did not err in affirming the hearings officer's determination that claimant had vested rights to complete and continue development of the 30-acre subarea. The court did err, however, in modifying the hearings officer's decision to allow a vested right to develop the entire tract.

Reversed in part, affirmed in part, and remanded to modify the writ of review judgment consistently with this opinion.