Argued and submitted March 8, 2011, affirmed on appeal; on cross-appeal, reversed and remanded with instructions to enter judgment reversing the county's decision and remanding for reconsideration in light of *Friends of Yamhill County v. Board of Commissioners*, 351 Or 219, 264 P3d 1265 (2011) May 2, 2012

STATE OF OREGON,
by and through the
Department of Land Conservation and Development,
*Plaintiff-Appellant,*
*Cross-Respondent,*

*and*

FRIENDS OF LINN COUNTY,
an Oregon nonprofit organization;
and John Mouille, an individual,
*Intervenors-Plaintiffs,*
*Cross-Respondents,*

*v.*

LINN COUNTY,
*Defendant-Respondent,*

*and*

Eugene GLENDER
and Viola Glender,
*Intervenors-Defendants,*
*Cross-Appellants.*

Linn County Circuit Court
083137; A144528

278 P3d 83

Denise G. Fjordbeck, Attorney-in-Charge, Civil/Administrative Appeals, argued the cause for appellant - cross-respondent. On the opening brief were John R. Kroger, Attorney General, David B. Thompson, Interim Solicitor General, and Tiffany Keast, Assistant Attorney General. On the reply brief were John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Tiffany Keast, Assistant Attorney General.

Ralph O. Bloemers argued the cause for cross-respondents. With him on the brief were Crag Law Center and Sean T. Malone.

Joel D. Kalberer argued the cause for cross-appellants. With him on the briefs was Weatherford, Thompson, Cowgill, Black & Schultz, P.C.

Eugene J. Karandy II waived appearance for respondent.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

HASELTON, C. J.

**HASELTON, C. J.**

Plaintiff, State of Oregon through the Department of Land Conservation and Development (DLCD), appeals a judgment in a writ of review proceeding that reversed and remanded defendant Linn County's[1] determination that Eugene and Viola Glender have a vested right to complete development of a 16-lot residential subdivision in compliance with county and state waivers issued pursuant to Ballot Measure 37 (2004).[2] On appeal, DLCD contends, *inter alia*, that, because the Glenders "incurred none of the costs put toward the project," there is nothing in the numerator of the expenditure ratio and, for that reason, the Glenders cannot establish a vested right to complete the subdivision as a matter of law. The Glenders cross-appeal contending, *inter alia*, that the writ of review court erred in determining that the county misconstrued the applicable law by failing to include the cost of the construction of residences when determining total project costs for purposes of the denominator of the expenditure ratio.[3]

As explained below, while this appeal was pending, the Supreme Court decided *Friends of Yamhill County v. Board of Commissioners*, 351 Or 219, 264 P3d 1265 (2011) (*Friends II*), which clarified the vested rights analysis that applies in cases such as this. In light of *Friends II*, we conclude that, although the writ of review court properly determined that the county erred by failing to include the cost of constructing residences in determining the total project cost, the writ of review court erred when it assumed a "hypothetical cost" of $100,000 per residence in calculating the total project cost. Those legal errors require reversal and a remand to the county for reconsideration because, contrary to DLCD's assertion, the Glenders did incur development costs applicable to the numerator of the expenditure ratio—*viz.*, the value of the land the Glenders dedicated to the county for

---

[1] Although named as a respondent, Linn County waived appearance on appeal.

[2] For a detailed description of the evolving legal context in which this case arose, see *Friends of Yamhill County v. Board of Commissioners*, 351 Or 219, 222-25, 264 P3d 1265 (2011).

[3] In their cross-appeal, in addition to naming DLCD as a cross-respondent, the Glenders also named Friends of Linn County and John Mouille, a neighboring property owner, as cross-respondents. Friends of Linn County and Mouille had intervened in the writ of review proceeding in support of DLCD.

a road in the subdivision. Accordingly, we affirm on appeal and, on cross-appeal, reverse and remand the writ of review court's judgment with instructions to reverse and remand the county's decision for reconsideration in light of *Friends II.*

The material facts are uncontroverted. The Glenders own 24.8 acres of property in Linn County. In 2005, David and Lois Irvine (the developers) executed an option agreement for the purchase of the Glenders' property.[4] Thereafter, the Glenders obtained Measure 37 waivers from the state and the county that allowed them to develop their property into a 16-lot residential subdivision. Expenditures were incurred, primarily by the developers.

On December 5, 2007—the day before Ballot Measure 49 (2007) became effective—the county recorded the Glenders' final subdivision plat. As part of the subdivision plat, the Glenders dedicated property to the county for purposes of constructing a road in the subdivision.[5] Gary Brown, a real estate broker, rendered the opinion that the real market value of the dedicated property was $53,040.

Thereafter, the Glenders and the developers applied for a determination from the county that they had a common law vested right to complete and continue the use described in the waivers.[6] After the county's Planning and Building

---

[4] The terms of the option itself and any related agreements between the Glenders and the developers are not part of the record in this case.

[5] Specifically, the subdivision plat contained the following declaration of the Glenders:

"Know all persons by these presents know that Eugene C. Glender and Viola Glender are the owners of the lands represented on this subdivision map and more particularly described in the surveyor's certificate and have caused the same to be surveyed and platted into lots and street, as shown, in accordance with the Oregon Revised Statutes, chapter 92. The street is being granted to the public without reservation or restriction whatsoever."

(Some capitalization omitted.) *See generally* Linn County Code 926.350(K) (providing, in part, that "[a]pproval of a final plat by Linn County shall constitute an acceptance by the public of the dedication of any road shown on the plat").

[6] As pertinent, section 5(3) of Measure 49 provides that claimants who had filed Measure 37 claims before June 28, 2007, had an entitlement to just compensation as provided in

"[a] waiver issued before the effective date of this 2007 Act [December 6, 2007] *to the extent that* the claimant's use of the property complies with the waiver and *the claimant has a common law vested right on the effective date of this 2007 Act to complete and continue the use described in the waiver.*"

(Emphasis added.)

Department (the department) determined that a vested right to complete the subdivision did not exist, the Glenders and the developers appealed to the Linn County Board of Commissioners (the board).

DLCD submitted comments to the board in support of the department's determination. Specifically, DLCD asserted that there was "insufficient evidence that the Glenders had incurred substantial costs * * * related to development of the property" and that, without evidence concerning the cost of constructing residences, "it is not possible to apply the vesting analysis factors * * *."

In determining whether the Glenders had a vested right to continue and complete the subdivision, the board considered the equitable factors identified by the Supreme Court in *Clackamas Co. v. Holmes*, 265 Or 193, 508 P2d 190 (1973).[7] Specifically, with regard to the expenditure ratio, the board included, among other expenditures, approximately $53,000—which represented the value of the land that the Glenders dedicated to the county—in the numerator. Further, the board determined that the expenditures were "consistent with the normal course of development" and that there was "no information to suggest that any expenditure or conduct * * * was made in bad faith." However, the board did not include the cost of constructing residences when calculating the total project cost for purposes of the denominator of the expenditure ratio, noting that the Glenders' Measure 37 claim [was] for compensation for *buildable home sites*, not for the homes themselves." (Emphasis added.) Ultimately, the

---

[7] Specifically, in *Holmes*, the Supreme Court stated:

"The test of whether a landowner has developed his land to the extent that he has acquired a vested right to continue the development should not be based solely on the ratio of expenditures incurred to the total cost of the project. We believe the ratio test should be only one of the factors to be considered. Other factors which should be taken into consideration are the good faith of the landowner, whether or not he had notice of any proposed zoning or amendatory zoning before starting his improvements, the type of expenditures, i.e., whether the expenditures have any relation to the completed project or could apply to various other uses of the land, the kind of project, the location and ultimate cost. Also, the acts of the landowner should rise beyond mere contemplated use or preparation, such as leveling of land, boring test holes, or preliminary negotiations with contractors or architects."

265 Or at 198-99.

board determined that the Glenders "have a vested right to continue to develop the 16-lot subdivision * * * with one home site on each lot."

DLCD sought review of the county's decision in circuit court by way of writ of review. On review, the court reversed and remanded the county's decision based on an analysis that focused on asserted deficiencies in the county's understanding and on application of the expenditure ratio. As pertinent to the dispositive issues on appeal, the court determined that, because the Glenders' land dedication—which occurred after the passage of Measure 49 but before it became effective on December 6—was not made in good faith, the county had inappropriately included the value of that dedication in the *numerator* of the expenditure ratio.[8] The court further determined that the county had erred in failing to determine the cost of constructing residences when calculating the *denominator* of the expenditure ratio (*i.e.*, total project cost). Finally, and notwithstanding the county's failure to determine the actual cost of residential construction and to include that cost in the denominator, the court concluded that, even assuming a "hypothetical cost [of construction] as low as $100,000 per house," the resulting expenditure ratio (with the land dedication expense excluded from the numerator) could not support the county's vesting determination for the entire 16-lot project.[9]

---

[8] With respect to the noninclusion of the value of the land dedication in the numerator, the court explained:

"A fair reading of *Holmes* is that one who incurs expenses after knowing of an imminent change in the law—in this case the enactment of Measure 49—does so at the risk that such additional expenses may not be considered in determining whether substantial costs have been incurred toward completion of the project. The Court does not find that the Glenders acted with a sinister or dishonest motive. Rather, the Court finds that whatever costs they may have incurred after the passage of Measure 49 were not incurred with the reasonable expectation that such expenses would be included in determining whether costs to that point were 'substantial.'

"* * * * *

"In any event, * * * there is very little question but that the Glenders would be successful in accomplishing a rescission of the property dedication should the County be unable or unwilling to allow home construction on these lots."

[9] The county sought input from the court concerning the scope of any remand. In particular, the county requested that "the matter be remanded for consideration of whether or not the Glenders have vested a lesser number of lots" and that the court "order that the subdivision be re-platted to coincide with the number of

DLCD appeals the resulting judgment, and the Glenders cross-appeal. Of the myriad contentions raised on appeal and cross-appeal, we address only those described below because they are dispositive.

We begin with the Glenders' contention on cross-appeal that the writ of review court "erred in requiring the [county] to make findings regarding the total project costs" for purposes of calculating the denominator of the expenditure ratio. Because the Supreme Court addressed that issue in *Friends II*, we describe its reasoning in some detail.

In *Friends II*, the Supreme Court explained that, although "all the *Holmes* factors may not apply in a given case and * * * the extent to which they do apply will presumably vary with the circumstances of each case," the expenditure ratio "provides the necessary starting point in analyzing whether a landowner has incurred substantial costs toward completion of the job." 351 Or at 242-43. Ultimately, the court concluded that "the county [in *Friends II*] misapplied the governing law in failing to decide the ratio between the costs that [the landowner] had incurred and the projected cost of constructing the residential subdivision." 351 Or at 245. Specifically, the court explained that the county's determination of the total project cost—that is, the denominator in the expenditure ratio—was inadequate because it "failed to find the estimated cost of building the homes." *Id.* at 246. Further, the court noted that the county's assumption that each residence might cost $450,000 to construct was an insufficient substitute. *Id.* at 247. In other words, the cost of completion of a residence must be established in the record and cannot be assumed.

---

dwellings vested and authorized, and that any lots not found to be vested be vacated." The court sought input from all the parties as to the issues of "partial vesting" and the status of the 16-lot subdivision. Although the court stated that it was remanding the case "for a determination of the number of additional lots [that] may be developed," the court essentially declined to resolve the issues concerning the propriety of partial vesting and the status of the subdivision. Specifically, the court stated:

"The only matter before the Court was and is the question whether the Glenders had acquired a vested right to develop a certain number of lots. It is up to the County, on remand, to decide how many lots may be developed. Whether the 'subdivision' must be re-platted is a decision for the County and not for this Court."

In sum, the Supreme Court reiterated that "there is no bright line for determining when an expenditure will be substantial enough to establish a vested right." *Id.* at 248. Ultimately, the court cautioned that the expenditure ratio "is not the sole factor to be considered, nor will it necessarily be the dispositive factor; that is, there is not some specific percentage which must always be present before the right to complete construction will vest." *Id.* Instead, in determining whether a common law vested right existed,

"the county needed to find the 'ultimate cost' of completing construction and also the ratio between the costs that [the landowner] had incurred and the cost of the project. Without those findings, the county was in no position to determine whether [the landowner's] expenditures, in light of all the *Holmes* factors, were substantial."

*Id.*

Based on the reasoning in *Friends II*, the county and the court in this case misconstrued the applicable law in determining the denominator of the expenditure ratio. Although the writ of review court properly determined that the county erred by failing to include the cost of constructing residences in determining the total project cost, the writ of review court erred when it assumed a "hypothetical cost" of $100,000 per residence in calculating the total project cost. Rather, the cost of construction must be based on an actual determination, not a hypothetical assumption.

That legal and methodological error would ordinarily require a reversal and remand to the county for reconsideration.[10] Here, however, there is an additional twist: If DLCD is correct in its appellate contention that the Glenders "incurred *none* of the costs put toward the project"—and, thus, that there is *nothing* in the numerator of the expenditure ratio—the Glenders could not establish a vested right in all events. (Emphasis added.) If that were the case, the

---

[10] *See, e.g., Friends II*, 351 Or at 244 (reasoning that, if "the county improperly construed the law in determining that [the landowner] had a vested right to complete his subdivision, then the Court of Appeals correctly reversed the circuit court's judgment and remanded for further proceedings before the county"); *id.* at 245 ("We agree with the Court of Appeals that the county misapplied the governing law in failing to decide the ratio between the costs that [the landowner] had incurred and the projected cost of constructing the residential subdivision.").

proper disposition would be simply to direct the writ of review court to reverse the county's vesting decision without a remand for reconsideration in light of *Friends II.*

The short and complete answer is that DLCD's premise is incorrect. Regardless of whether any other expenditures are properly included in the numerator, the county determined that the Glenders did, in fact, dedicate land to the county in connection with the proposed development, and the value of that land was includable in the numerator of the expenditure ratio. *See Friends of Polk County v. Oliver,* 245 Or App 680, 693, 264 P3d 165 (2011), *rev den,* 351 Or 586 (2012) (reasoning that value that the claimant gave up as part of the settlement of a condemnation action that was attributable to a particular phase of the development was properly included in the numerator of the expenditure ratio). That is so regardless of whether the Glenders could successfully vacate the dedication if it were later determined that they lacked a vested right to complete the subdivision.[11]

As previously noted, 249 Or App at 542, 542 n 8, the writ of review court excluded the value of the land dedication from the numerator because the dedication occurred after the passage of Measure 49 but before its effective date. In other words, the court determined as a categorical matter that the expenditure was not made in good faith.[12] However, in *Friends II,* the Supreme Court rejected that type of categorical approach. Specifically, the Supreme Court explained that Measure 49

"leaves it to the trier of fact, as the common law did, to determine the good or bad faith of the landowner in making

---

[11] We note that many of the parties' contentions concern the proper calculation of the numerator of the expenditure ratio (*e.g.*, disputes regarding the values properly assigned to the various expenditures or whether certain expenditures are properly includable in the numerator). Given our analysis and disposition, we need not address and resolve any disputes in that regard.

[12] DLCD now contends on appeal that the writ of review court correctly determined that the county erred by including the value of the land dedication in the numerator because "[t]he record * * * lacked substantial evidence supporting [its] value." However, DLCD did not raise that contention in the writ of review proceeding, and, in all events, we decline to address it. *Cf. Biggerstaff v. Board of County Commissioners,* 240 Or App 46, 56, 245 P3d 688 (2010) ("[O]ur consideration of an alternative basis for affirmance is a matter of prudential discretion and not compulsion.").

expenditures. Specifically, the trier of fact could find that expenditures made, after the voters adopted Measure 49, to 'thwart the legislative act' were made in bad faith. Conversely, nothing precludes a trier of fact from finding that expenses planned before the voters approved Measure 49 but incurred after its passage but before its effective date were not made to thwart the measure."

351 Or at 241-42. Moreover, as the Supreme Court in *Friends II* made clear, it is the trier of fact rather than the reviewing court that determines whether an expenditure was made in good faith. *Id.*

In sum, we have concluded that the value of the land that the Glenders dedicated to the county is includable in the numerator of the expenditure ratio and that the county and writ of review court erred in determining the denominator of the ratio. Accordingly, we must reverse the writ of review court's judgment and remand with instructions to enter a judgment reversing the county's decision and remanding for reconsideration in light of the analytical construct that the Supreme Court described in *Friends II*.[13]

Affirmed on appeal; on cross-appeal, reversed and remanded with instructions to enter judgment reversing the county's decision and remanding for reconsideration in light of *Friends of Yamhill County v. Board of Commissioners*, 351 Or 219, 264 P3d 1265 (2011).

---

[13] Given our analysis and disposition, we need not address and resolve any of the parties' other disputes.