Argued and submitted November 8, 2010, reversed and remanded June 1, 2011, intervenors-respondents' petition for review allowed; decision of the Court of Appeals vacated; and case remanded to Court of Appeals for reconsideration January 12, 2012 (351 Or 541)

# OREGON SHORES CONSERVATION COALITION,
an Oregon non-profit corporation,
*Petitioner-Appellant,*

*v.*

# BOARD OF COUNTY COMMISSIONERS
# OF CLATSOP COUNTY,
an Oregon municipal corporation,
*Respondent-Respondent,*

*and*

Gary S. ASPMO
and Beverly J. Aspmo,
in their roles as co-Trustees of
the Edsell G. Aspmo Credit Shelter Trust,
*Intervenors-Respondents.*

Clatsop County Circuit Court
082633; A143688

258 P3d 1269

Courtney B. Johnson argued the cause for appellant. With her on the briefs was Crag Law Center.

Seth J. King argued the cause for respondents Gary S. Aspmo and Beverly J. Aspmo. With him on the brief were Erick J. Haynie and Perkins Coie LLP.

Blair Henningsgaard waived appearance for respondent Board of County Commissioners of Clatsop County.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Petitioner Oregon Shores Conservation Coalition (OSCC) appeals the circuit court's judgment in a writ of review proceeding that affirmed respondent Clatsop County's[1] determination that respondents Gary and Beverly Aspmo (the Aspmos) have a vested right to complete development of a 30-lot residential subdivision in compliance with county and state waivers issued pursuant to Ballot Measure 37 (2004).[2] On appeal, OSCC contends that the reviewing court misconstrued the applicable law in sustaining the county's determination that the Aspmos had a vested right to complete that development because (1) the Aspmos "had no final plat approval or building permits and had not initiated the use"—*viz.*, the construction of residences; (2) a significant portion of the Aspmos' development expenditures were not made in good faith; and (3) there was not adequate consideration of the expenditure ratio—that is, a comparison of the relevant expenditures to the "total project cost." Further, OSCC contends that the reviewing court erred in upholding the county's finding that the Aspmos' expenditures could not be adapted to an alternative lawful use because that finding was not supported by substantial evidence. Consistently with our decision in *Friends of Yamhill County v. Board of Commissioners*, 237 Or App 149, 165-68, 176, 178, 238 P3d 1016 (2010), *rev allowed*, 349 Or 602 (2011), we reject OSCC's legal contentions concerning good faith and the initiation of construction and lack of permits without further discussion but conclude that the court should have remanded the decision to the county to determine the total project cost and to give proper weight to the expenditure ratio in the circumstances of this case. Further, for the reasons that we will

---

[1] Although named as a respondent, Clatsop County has waived appearance on appeal.

[2] This is one of many recent cases concerning whether a property owner has a vested right to complete development in compliance with a Measure 37 waiver after the voters approved Ballot Measure 49 (2007), which "narrowed the effect of Measure 37, including a reduction in the degree of residential development allowed under a requested Measure 37 waiver." *Friends of Yamhill County v. Board of Commissioners*, 237 Or App 149, 152, 238 P3d 1016 (2010), *rev allowed*, 349 Or 602 (2011). For a detailed description of the evolving legal context in which this case arose, see *Friends of Yamhill County*, 237 Or App at 151-53.

explain, we conclude that OSCC's contentions concerning the adaptability of expenditures are unreviewable. Accordingly, we reverse and remand the reviewing court's judgment.

The material facts are uncontroverted. In 1995, the Aspmos obtained state and county waivers that allowed for the development of a 30-lot residential subdivision. The Aspmos subsequently obtained preliminary subdivision approval and claimed to have expended over $200,000 to develop the property before Measure 49 became effective on December 6, 2007.[3]

Thereafter, the Aspmos applied to the county's Director of Transportation and Development Services for a determination that they had a vested right to complete and continue the use described in the Measure 37 waivers, and OSCC submitted comments in response to the application. The director determined that "the Aspmos have demonstrated a vested right to continue and complete phase one of their development as a residential subdivision, and to construct dwellings on each of the five lots in phase one," but that they "have not demonstrated a vested right to complete and continue development of the remainder of the property."

---

[3] As pertinent to this case, claimants, such as the Aspmos, who had filed Measure 37 claims on or before June 28, 2007, had an entitlement, under section 5(3) of Measure 49, to just compensation as provided in

"[a] waiver issued before the effective date of this 2007 Act [December 6, 2007] *to the extent that* the claimant's use of the property complies with the waiver and *the claimant has a common law vested right on the effective date of this 2007 Act to complete and continue the use described in the waiver.*"

(Emphasis added.)

As we explained in *Kleikamp v. Board of County Commissioners*, 240 Or App 57, 60, 246 P3d 56 (2010),

"[i]n *Friends of Yamhill County*, we examined the meaning of the term 'common law vested right' as used in section 5(3) of Measure 49. In doing so, we surveyed Oregon case law, including the Supreme Court's decision in *Clackamas Co. v. Holmes*, 265 Or 193, 198-99, 508 P2d 190 (1973), in which the court established factors for determining whether a common law vested right exists in a particular case, including (1) the ratio of development expenditures to the total project cost; (2) whether the landowner's expenditures were made in good faith; (3) whether the expenditures are related to the completed project or could apply to other uses of the property; and (4) the nature, location, and ultimate cost of the project."

*See also Friends of Yamhill County*, 237 Or App at 159-65 (surveying Oregon's vested rights case law).

Significantly, unlike in other cases that we have considered,[4] the director determined that, in calculating the vested right expenditure ratio, the cost of residences must be included in the denominator. The director noted that, even though the "Aspmos did not include the cost of constructing homes on each lot in the subdivision," he could rely on a "rough estimate," which "assum[ed] the current average price per square foot of $120, for homes between 1,500 and 2,500 square feet." In light of that estimate, the director determined that "the Aspmos ha[d] spent between 2% and 3% of the total cost to develop the property" and, thus, that the expenditure ratio "factor weigh[ed] against a vested right."

The director also determined that the adaptability factor—that is, whether the expenditures could apply to other uses of the property—"weigh[ed] against a vested right." Specifically, the director reasoned that, even though the expenditures "are contrary to the property's use for forest operations," most of those expenditures "could have been used for the 1-10 lots that would have been permitted by Measure 49[.]"[5]

Pursuant to a local procedure, the Aspmos appealed the director's decision to the board of commissioners, and, again, OSCC submitted comments. With regard to the expenditure ratio, the board agreed with the director that "the cost of constructing homes is properly included in the total project cost * * *." In determining the total project cost in this case, the board determined that it could properly consider "a range of the potential total cost" of development. Specifically, the board explained:

---

[4] *See, e.g., DLCD v. Crook County*, 242 Or App 580, 256 P3d 178 (2011); *Davis v. Jefferson County*, 239 Or App 564, 245 P3d 665 (2010).

[5] In addition to providing for just compensation as provided in a Measure 37 waiver under section 5(3), Measure 49 also provides for other forms of just compensation to claimants who had filed a Measure 37 claim before June 28, 2007. For example, "[s]ection 6 requires approval of up to three lots, parcels, or dwellings under certain circumstances. Section 7 permits discretionary approval of up to 10 homesites under a more narrow set of circumstances." *Friends of Yamhill County*, 237 Or App at 153 n 1. Further, "[s]ection 9 provides that owners of property within the urban growth boundary of a city may qualify to develop one to 10 single-family dwellings under specified circumstances." *Id.* at 153 n 2.

"There is conflicting evidence in the record as to the total costs associated with constructing homes in the Subdivision. Opponent 1000 Friends of Oregon submitted evidence estimating that the total project cost is approximately $10,024,880. The Director roughly estimated that homes would cost $120 a square foot to construct and that homes would range from 1,500 to 2,500 square feet in size. At this rate, the Director calculated a total project cost ranging from $5,000,000 to $9,000,000. The Aspmos countered this testimony with evidence that homes could be constructed on the Property for substantially less than the Director estimates, particularly if they implemented prefabricated or modular construction techniques. In such case, the cost of constructing the homes could be as low as $31 a square foot. If the homes cost only $31 a square foot and were 1,812 square feet in size, the Aspmos could construct all 30 homes for approximately $1,680,000, bringing the total project cost to $2,840,000.

"The Board finds that it is reasonable to consider these estimates as a range of the potential total cost for developing the Subdivision with a dwelling on each lot. This range extends from $2,840,000 to $10,024,880. The Aspmos have incurred eligible expenses totaling $244,772.89. These expenses represent between 2.4% and 8.6% of the total project cost. Although the Board finds that the Aspmos' expenditures are substantial in nature, the Board finds that there is insufficient evidence to support a determination that the expenditure ratio weighs in favor of finding a vested right to complete and continue development of the Subdivision with a dwelling on each lot."

Further, the board reasoned that, even though it did not weigh in favor of a determination of vesting, the ratio factor "should have lesser importance in the overall analysis of the Application." According to the board, that was so because "the over $7,000,000 range in cost estimates and the current volatility of the credit and housing markets renders these figures inherently unreliable" such that "the resulting expenditure ratio is not informative in this context."

With regard to the issue of the adaptability of expenditures, the board determined that the director's determination that the Aspmos' expenditures could apply to other uses was not supported by the evidence. Specifically, the board reasoned, in pertinent part:

"Evidence in the record establishes that the Aspmos' activities through the effective date of [Measure] 49 are *more* consistent with development of a 30-lot subdivision than with any other permitted use of the Property. For example, the Aspmos expended funds to obtain permits in furtherance of a 30-lot subdivision, cleared and graded the Property to support a 30-lot subdivision, drilled wells of sufficient size to support the first phase of a 30-lot subdivision, and installed internal roads of sufficient size and location to support a 30-lot subdivision. Thus, the infrastructure was entirely inconsistent with development of forest or agricultural options, which are the only uses permitted in the underlying * * * zoning district. Moreover, this infrastructure was greatly oversized for the only other viable alternative under [Measure] 49—the so-called 'Express' option [pursuant to section 6], which could allow up to three (3) homesites."[6]

(Emphasis in original.) Accordingly, the board "found that [the Aspmos'] Application satisfies [the adaptability] factor." Stated differently, the board found that the Aspmos' expenditures were *not* adaptable to an alternative use.

Ultimately, the board determined that the Aspmos had "a common law vested right to complete and continue development of the Subdivision on the Property with thirty (30) lots and a single-family dwelling on each lot." OSCC sought review of the board's decision, by way of writ of review, in the circuit court. *See* ORS 195.318.[7]

The reviewing court's reasoning, expressed in its letter opinion, was limited to the following observation:

"I am in agreement with [the Aspmos'] arguments as to each issue in dispute. Specifically, that the Aspmos' efforts,

---

[6] Further, the board noted that the Aspmos were prohibited from pursuing other options under Measure 49 that would have allowed for more homesites. *See* 243 Or App at 302 n 5.

[7] ORS 195.318 provides, in part, that "[a] person that is adversely affected by a final determination of a public entity under * * * sections 5 to 11, chapter 424, Oregon Laws 2007, * * * may obtain judicial review of that determination under ORS 34.010 to 34.100, if the determination is made by * * * a county[.]" For purposes of ORS 195.318(1), a "person" includes a private organization like OSCC. ORS 197.015(18). Further, a person is "adversely affected" if the person "timely submitted written evidence, arguments or comments to a public entity concerning the determination." ORS 195.318(2)(b).

expenditures, actions and progress toward completing their subdivision plan have been obvious and substantial; that their use complied with the waivers issued by the county and state; and that the county did not improperly construe the applicable law."

Ultimately, the court entered a judgment affirming the board's decision. OSCC appeals.

On appeal, with regard to the expenditure ratio, OSCC contends that the county and the reviewing court, in sustaining the county's decision, misconstrued the applicable law in applying the expenditure ratio. Specifically, OSCC contends that,

"[r]ather than evaluating total project cost based on the proposed development as presented during the land use application process, [the county] considered a narrower, low-end range of costs based on [the Aspmos'] assertion, made for the first time during the vesting determination, that they would place inexpensive prefabricated modular structures on the land. [The county] and the [reviewing] court ignored the stated plans for build-to-suit 3,000 square foot minimum and larger homes and instead relied on placement of 1,800 square foot manufactured homes. * * *

"* * * * *

"The approach taken by [the county] and accepted by the [reviewing] court sets up a standard allowing [the Aspmos] to present an after the fact lowball figure for a total project cost in order to create the appearance of greater expenditures incurred. Creating a lower denominator after December 6, 2007[,] in order to artificially elevate the ratio of expenditures incurred skews the vesting analysis in a manner that is inconsistent with the common law."

Further, OSCC contends that "[t]he expenditure ratio, properly considered, deserves at least equal weight in the vesting analysis."

With regard to the county's adaptability finding, OSCC does not focus on whether the county applied the proper legal standard in determining whether the Aspmos' expenditures were adaptable. Instead, OSCC raises a substantial evidence challenge. In particular, OSCC contends:

"The courts look not only to the substantiality of expenditures, but also to whether those expenditures 'could apply to various other uses of the land.' [*Clackamas Co. v.*] *Holmes*, 265 Or [193,] 199[, 508 P2d 190 (1973)]. Expenditures and improvements have been found to be adaptable where there is an economically reasonable alternative use available. *Webber* [*v. Clackamas County*], 42 Or App [151,] 155-56[, 600 P2d 448, *rev den*, 288 Or 81 (1979)]. The claimant bears the burden of showing expenditures are incompatible with alternative uses.

"Under current zoning, [the Aspmos'] property could be used for forestry or agricultural purposes. In addition, [section 6 of] Measure 49 provides for an alternative residential use of up to three homesites for a property like [the Aspmos'] land.

"In determining that [the Aspmos'] expenditures could not be adapted to an alternative lawful use, [the county] applied a 'more consistent with' standard. [The county] found that the permits, land clearing, wells, and roads were 'entirely inconsistent' with forest or agricultural uses, and 'greatly oversized' for the development of a smaller subdivision allowable under Measure 49. [The county's] decision was not supported by substantial evidence, and the [reviewing] court erred in upholding [the county's] decision."

(Record citations omitted.)

Conversely, the Aspmos contend that the reviewing court properly considered the ratio and adaptability factors. Specifically, with regard to the ratio factor, they assert that "evidence of total project cost is not even required in assessing whether an owner has established a vested right." Moreover, the Aspmos contend that, in this case, "there are too many variables to set a firm estimate of the total project cost for the Subdivision." Finally, the Aspmos contend that, because "the expenditure ratio is no more important than any of the other factors[,]" it was reasonable for the court and the county to determine that "this factor [was] of lesser importance under the circumstances."

In terms of the adaptability factor, the Aspmos remonstrate that the county "properly applied the applicable legal standards to determine that [the Aspmos'] expenditures were more consistent with a 30-lot residential subdivision

than any alternative use, and that no reasonable alternatives existed from which [the Aspmos] could obtain a reasonable economic return." Further, the Aspmos note that substantial evidence supported the county's finding. With the issues so framed, we turn first to the parties' contentions concerning the ratio factor.

We have previously addressed contentions concerning the ratio factor that are similar to those of the parties in this case.[8] As we reiterated in *Kleikamp v. Board of County Commissioners*, 240 Or App 57, 65, 246 P3d 56 (2010), "a landowner's proof of 'substantial expenditures' is the *sine qua non* of a vesting determination." That determination "requires an examination of both the absolute amount expended and the percentage yielded by the expenditure ratio." *Id.* at 66. Significantly, we explained that "a cogent assessment of total project cost (and, concomitantly, the expenditure ratio) will, in turn, require particular identification of the development that the property owner sought to vest as of December 6, 2007," and that "property owners must demonstrate 'the *likely* costs of completing the particular development sought to be vested *based on construction costs as of December 6, 2007.*'" *Id.* (quoting *Friends of Yamhill County*, 237 Or App at 178) (emphasis in *Kleikamp*).

In light of those principles, we conclude, as we concluded in our previous decisions, that the reviewing court "should have remanded for the county to determine the extent and general cost of the project to be vested and to give proper weight to the expenditure ratio factor in the totality of the circumstances of this case." *Friends of Yamhill County*, 237 Or App at 178. Here, the county's and reviewing court's treatments of the denominator in the expenditure ratio did not assess the total project cost of the development that the Aspmos sought to vest as of December 6, 2007, based on construction costs as of that date. That legal error requires reversal.[9]

---

[8] *See, e.g.*, *Crook County*, 242 Or App 580; *Biggerstaff v. Board of County Commissioners*, 240 Or App 46, 54, 245 P3d 688 (2010); *Davis*, 239 Or App 564; *Friends of Yamhill County*, 237 Or App 149.

[9] As noted in other cases, although there is information in this record concerning the total project costs, "it will be incumbent on the county * * * to determine how, if at all, that information bears on a determination of total project cost in light

Having resolved OSCC's legal contention, we turn, finally, to its substantial evidence challenge concerning the adaptability factor—*viz.*, that the reviewing court erred in determining that the county's finding that the Aspmos' expenditures were not adaptable to an alternative lawful use was supported by substantial evidence. In *Davis v. Jefferson County*, 239 Or App 564, 573, 245 P3d 665 (2010), we explained that "[w]e review the circuit court's application of the substantial evidence standard for whether the court applied the correct legal test for substantial evidence."

Here, as previously described, 243 Or App at 304-05, although the reviewing court affirmed the county's determination that the Aspmos had a vested right to complete and continue the use described in the waiver, the court did not explicitly address whether substantial evidence supported the county's finding concerning the adaptability factor. Again, the court's core reasoning was that

"the Aspmos' efforts, expenditures, actions and progress toward completing their subdivision plan have been obvious and substantial; that their use complied with the waivers issued by the county and state; and that the county did not improperly construe the applicable law."

In light of that reasoning, we are unable to determine whether the reviewing court reviewed the county's finding concerning the adaptability factor for substantial evidence and, if it did, whether it applied the correct standard. Accordingly, on remand the reviewing court must address that issue. *See Davis*, 239 Or App at 573 ("The reviewing court did not explain why it affirmed the challenged finding [concerning adaptability]. We cannot determine from this record if the court reviewed that particular finding at all, much less if it applied the correct legal standard in doing so. A remand is necessary to allow the reviewing court to address the evidentiary support for that finding.").

Reversed and remanded.

---

of the fundamental principles underlying our decision in *Friends of Yamhill County* and reiterated here." *Kleikamp*, 240 Or App at 67 n 7.