Submitted on remand from the Oregon Supreme Court February 14, reversed
and remanded May 2, 2012

OREGON SHORES CONSERVATION COALITION,
an Oregon non-profit corporation,
*Petitioner-Appellant,*

*v.*

BOARD OF COUNTY COMMISSIONERS
OF CLATSOP COUNTY,
an Oregon municipal corporation,
*Respondent-Respondent,*

*and*

Gary S. ASPMO
and Beverly J. Aspmo,
in their roles as co-Trustees of the
Edsell G. Aspmo Credit Shelter Trust,
*Intervenors-Respondents.*

Clatsop County Circuit Court
082633; A143688

277 P3d 639

Courtney B. Johnson and Crag Law Center for appellant.

Erick J. Haynie, Seth J. King, and Perkins Coie LLP for respondents Gary S. Aspmo and Beverly J. Aspmo.

Blair Henningsgaard waived appearance for respondent Board of County Commissioners of Clatsop County.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

HASELTON, C. J.

**HASELTON, C. J.**

This case is on remand from the Oregon Supreme Court, which vacated our prior decision, *Oregon Shores v. Board of County Commissioners*, 243 Or App 298, 258 P3d 1269 (2011) (*Oregon Shores I*), and remanded for reconsideration in light of *Friends of Yamhill County v. Board of Commissioners*, 351 Or 219, 264 P3d 1265 (2011) (*Friends II*). *Oregon Shores v. Board of County Commissioners*, 351 Or 541, 273 P3d 135 (2012). On remand, the dispositive issue is whether—as petitioner Oregon Shores Conservation Coalition (OSCC) contends—the writ of review court misconstrued the applicable law in sustaining respondent Board of County Commissioners of Clatsop County's[1] decision that respondents Gary and Beverly Aspmo (the Aspmos) have a vested right to complete a residential subdivision in compliance with county and state waivers issued pursuant to Ballot Measure 37 (2004). Specifically, OSCC contends, *inter alia*, that the county misconstrued the applicable law in applying the expenditure ratio—that is, a comparison of relevant expenditures to total project cost. In *Oregon Shores I*, we concluded that "the court should have remanded the decision to the county to determine the total project cost * * *." 243 Or App at 300. As amplified below, because that conclusion concerning the application of the expenditure ratio is consistent with the Supreme Court's decision in *Friends II*, we again reverse and remand.

A recitation of the facts and procedural history of this case is unnecessary in this context. For that reason, we adhere to our description in *Oregon Shores I*, 243 Or App at 301-07, and readopt it here. Accordingly, we turn to the dispositive issue on remand—that is, the propriety of the writ of review court's affirmance of the county's decision that the Aspmos had a common law vested right to complete the development of the residential subdivision in compliance with their Measure 37 waivers.

---

[1] Although named as a respondent, the Board of County Commissioners of Clatsop County has waived appearance on appeal.

In *Friends II*, the Supreme Court explained that its earlier decision in *Clackamas Co. v. Holmes*, 265 Or 193, 198-99, 508 P2d 190 (1973), identified the factors that guide a determination of whether a common law vested right exists in a case such as this.[2] In *Friends II*, the court explained that, although "all the *Holmes* factors may not apply in a given case and * * * the extent to which they do apply will presumably vary with the circumstances of each case," the expenditure ratio "provides the necessary starting point in analyzing whether a landowner has incurred substantial costs toward completion of the job." 351 Or at 242-43. Ultimately, the court concluded that "the county [in *Friends II*] misapplied the governing law in failing to decide the ratio between the costs that [the landowner] had incurred and the projected cost of constructing the residential subdivision."[3] 351 Or at 245. Specifically, the court explained that the county's determination of the total project cost—that is, the denominator in the expenditure ratio—was inadequate because it "failed to find the estimated cost of building the homes." *Id.* at 246. Further, the court noted that the county's assumption that each residence might cost $450,000 to construct was an insufficient substitute. *Id.* at 247. In other words, the cost of

---

[2] Specifically, in *Holmes*, the Supreme Court stated:

"The test of whether a landowner has developed his land to the extent that he has acquired a vested right to continue the development should not be based solely on the ratio of expenditures incurred to the total cost of the project. We believe the ratio test should be only one of the factors to be considered. Other factors which should be taken into consideration are the good faith of the landowner, whether or not he had notice of any proposed zoning or amendatory zoning before starting his improvements, the type of expenditures, i.e., whether the expenditures have any relation to the completed project or could apply to various other uses of the land, the kind of project, the location and ultimate cost. Also, the acts of the landowner should rise beyond mere contemplated use or preparation, such as leveling of land, boring test holes, or preliminary negotiations with contractors or architects."

265 Or at 198-99.

[3] Further, the court in *Friends II* noted:

"[T]he county found only that there was 'substantial evidence' to support a range of ratios. Substantial evidence, however, is the standard by which a court reviews a county's factual findings on a writ of review. It is not the standard by which the trier of fact makes a factual finding in the first place. The county's job as the trier of fact was to decide by a preponderance of the evidence what the estimated cost of constructing the planned homes was."

351 Or at 246-47 (citation omitted).

completion of a residence must be established in the record and cannot be assumed.

In sum, the Supreme Court reiterated that "there is no bright line for determining when an expenditure will be substantial enough to establish a vested right." *Id.* at 248. However, the court cautioned that the expenditure ratio "is not the sole factor to be considered, nor will it necessarily be the dispositive factor[.]" *Id.* Instead, in determining whether a common law vested right existed,

> "the county needed to find the 'ultimate cost' of completing construction and also the ratio between the costs that [the landowner] had incurred and the cost of the project. Without those findings, the county was in no position to determine whether [the landowner's] expenditures, in light of all the *Holmes* factors, were substantial."

*Id.*

Here, in determining the total project cost, the county determined that it could properly consider "a range of the potential total cost." Further, the county reasoned that, even though the expenditure ratio did not weigh in favor of a vesting determination, the ratio factor "should have lesser importance in the overall analysis of the Application" because "the over $7,000,000 range in cost estimates and the current volatility of the credit and housing markets renders these figures inherently unreliable" such that "the resulting expenditure ratio is not informative in this context." Ultimately, the county determined that the Aspmos had a vested right to complete development of the residential subdivision. The writ of review court entered a judgment affirming the county's decision.

In sum, the county and the reviewing court's treatments of the denominator in the expenditure ratio did not assess the total cost of the development, which necessarily includes building costs, that the Aspmos sought to vest as of December 6, 2007—the effective date of Ballot Measure 49

(2007).[4] Consistently with the reasoning in *Friends II*, those legal errors require reversal.[5]

Accordingly, we reverse and remand the writ of review court's judgment with instructions to reverse and remand the county's decision for reconsideration in light of *Friends II*.

Reversed and remanded.

---

[4] *See Friends II*, 351 Or at 246 (reasoning that the county misconstrued the applicable law by failing to "determine the type of homes that [the landowner] planned to build" and "what the estimated cost of building those homes was"); *id.* at 246 n 20 ("In deciding the cost of building the homes, the county must find what type of homes [the landowner] planned to build. To the extent that [the landowner's] plans changed between the time that he began planning the development and the effective date of Measure 49, then the county must decide whether the change in plans was a bad-faith attempt to thwart Measure 49 or a good-faith response to shifting economic or other conditions."); *Campbell v. Clackamas County*, 247 Or App 467, 476-77, 270 P3d 299 (2011) ("Because the vested rights determination under Measure 49 is made as of December 6, 2007, the effective date of the measure, it is incumbent on the property owner to establish the likely total project cost in relation to the size and character of the structures that the owner contemplated building in compliance with a Measure 37 waiver as of December 6, 2007. Moreover, the likely total project cost is based on construction costs as of December 6, 2007." (Citations and internal quotation marks omitted.)).

[5] Given our analysis and disposition, which requires a remand to the county for reconsideration in light of *Friends II*, we need not address and resolve any of the parties' other disputes, including those concerning good faith and whether the writ of review court erred in upholding the county's finding that the Aspmos' expenditures could not be adapted to an alternative lawful use because that finding was not supported by substantial evidence.