JAMES, J.
*271 In this case regarding common law vested rights under Ballot Measure 49 (2007), the Oregon Shores Conservation Coalition (OSCC) and the State of Oregon (jointly, appellants) appeal a judgment entered in a writ-of-review proceeding that affirmed Clatsop County's determination that Gary and Beverly Aspmo (claimants) have a vested right under Measure 49 to complete a 15-lot subdivision on their property. As explained below, we reject appellants' contention that ORS 215.130, and the Clatsop County ordinance implementing that statute, apply to claimants' Measure 49 claim and extinguish it. Thus, the writ-of-review court correctly affirmed the county's determination that ORS 215.130 does not apply. However, we agree with appellants that the county misconstrued the law when it reasoned that, although claimants had no vested right to complete the development that they intended to construct when Measure 49 took effect-a 30-lot subdivision-they nonetheless had a vested right to complete a development that they never intended to construct, namely, a 15-lot subdivision. Consequently, the writ-of-review court erred in affirming the county's order in that regard. Accordingly, we reverse and remand.
We state the facts consistently with the uncontested explicit and implicit factual findings in the county's vesting determination. Friends of Yamhill County v. Board of Commissioners , 237 Or. App. 149, 153, 238 P.3d 1016 (2010), aff'd , 351 Or. 219, 264 P.3d 1265 (2011) ( Friends I ). In 2005, pursuant to Ballot Measure 37 (2004),[1] claimants sought *649 waivers of land use regulations from Clatsop County and from the state.[2] In their applications for the waivers, they stated that they intended to build a 20-lot subdivision on their property. The county and the state issued waivers agreeing not to apply regulations preventing claimants from subdividing and building dwellings on their property. *272 Neither waiver stated the number of lots into which the property could be divided or the number of dwellings that claimants could build.
In February 2007, claimants applied to the county for approval for a 30-lot subdivision on their property. In August 2007, the county granted preliminary approval of that subdivision. Before December 6, 2007, the effective date of Measure 49, claimants spent $ 244,772.89 toward construction of the planned 30-lot subdivision. They cleared and graded the property, installed rock base for the roads, bored test holes for septic systems, and drilled wells to provide water for several homes in the first phase of the project, which was to include five lots. They obtained all necessary permits for that work. By December 6, 2007, claimants had stopped all work on the property.
As discussed further below, Measure 49 extinguished all Measure 37 waivers, including claimants'. Under Measure 49, landowners "who had been proceeding with a development under the authorization of a Measure 37 waiver could no longer automatically continue to do so. Instead, they had to choose among three pathways: the express pathway, the conditional pathway, and the vested rights pathway." Friends of Yamhill County v. Board of Commissioners , 351 Or. 219, 228, 264 P.3d 1265 (2011) ( Friends II ). Claimants chose the vested rights pathway established in section 5(3) of Measure 49, which is set out below, 297 Or. App. at ----, 441 P.3d at ----, and Clatsop County Ordinance 08-06, which provides procedures and standards for a vested rights determination under section 5(3) of Measure 49.[3] In March 2008, they applied to Clatsop County for a determination that they had a vested right to complete and continue their 30-lot subdivision.
The county hearings officer determined that claimants did not have a vested right to complete the 30-lot subdivision, but that they did have a vested right to complete the five lots and homes that made up the first phase of the development. However, the county disagreed; it decided that claimants had a vested right to complete the whole 30-lot subdivision. OSCC, which had appeared before the county, *273 sought review of that determination by writ of review in circuit court. The circuit court affirmed the county's determination, and OSCC appealed to this court. Ultimately, we reversed and remanded for reconsideration by the county.[4] Oregon Shores v. Board of County Commissioners , 249 Or. App. 531, 536, 277 P.3d 639 (2012). The circuit court remanded the case to the county on September 13, 2012.
On July 29, 2014, claimants submitted materials to the county for a new determination of whether they had a vested right to complete and continue their 30-lot subdivision. The state and OSCC both appeared before the county, contending that claimants did not have a vested right to complete the development of their property. Among other arguments, appellants contended that any vested right that claimants had was subject to ORS 215.130, which provides that nonconforming uses of land "may not be resumed after a *650 period of interruption or abandonment." ORS 215.130(5), (7). A Clatsop County ordinance implementing that statute provides, "If a non-conforming use is discontinued for a period of one year, subsequent use of the property shall conform to" current land use regulations. Clatsop County Land and Water Development and Use Ordinance § 5.618. Our case law establishes that common law vested rights to develop property are "inchoate nonconforming uses" that can be subject to ORS 215.130. Fountain Village Development Co. v. Multnomah Co. , 176 Or. App. 213, 221, 31 P.3d 458 (2001), rev. den. , 334 Or. 411, 52 P.3d 436 (2002) ( Fountain Village ).
Appellants contended that claimants discontinued their use by not submitting materials for a new county vesting determination between September 13, 2012, when the circuit court remanded the matter to the county, and July 29, 2014. Noting that that period of time was more than *274 one year, appellants contended that any vested right that claimants might have had was extinguished by operation of the statute and the ordinance.
The county rejected that argument, holding that the statute and the ordinance did not apply. The county implicitly found that claimants intended to construct a 30-lot subdivision, but determined that they had no vested right to complete and continue that use because they had spent only three percent of the total cost of construction of the project before Measure 49 became effective. See Friends II , 351 Or. at 242-43, 264 P.3d 1265 (explaining the role of the expenditure ratio-the ratio between the costs incurred toward completion of the project before a change in the law and the total cost of construction of the project-in vested rights analysis).
After making that determination, the county decided that claimants nevertheless had a vested right to construct a 15-lot subdivision. Appellants both sought writs of review in the Clatsop County circuit court, and the circuit court consolidated the proceedings. The circuit court entered a general judgment upholding the county's decision.
On appeal of that judgment, appellants contend that the county and the circuit court misconstrued the law in several ways, including by failing to apply ORS 215.130(7) and the ordinance implementing it and in determining that claimants had a vested right to complete a 15-lot subdivision that they never intended to construct. Claimants, Clatsop County, and the Clatsop County Board of Commissioners have not submitted responding briefs.
In an appeal from a writ of review where the parties' arguments raise only questions of law, as they do here, we review for errors of law. See Friends II , 351 Or. at 244, 264 P.3d 1265 (explaining standard of review on appeal of a writ of review from a Measure 49 vested rights determination); Or. Laws 2007, ch. 424, § 16, codified at ORS 195.318 (allowing challenges to county vested rights decisions under Measure 49 by way of writ of review); ORS 34.040(1)(d) (in a writ-of-review proceeding, the circuit court must determine, among other things, whether the county "[i]mproperly construed the applicable law"). We begin by addressing appellants' contention that ORS 215.130 and the ordinance implementing it *275 extinguished claimants' claim under section 5(3) of Measure 49. When the meaning of a statute is at issue, we are responsible for identifying the correct interpretation regardless of whether it has been asserted by the parties. Stull v. Hoke , 326 Or. 72, 77, 948 P.2d 722 (1997). In interpreting statutes, our goal is to discern the intention of the legislature or, in the case of ballot measures, the voters, by examining the text, context, and any pertinent legislative history of the statute. Friends I , 237 Or. App. at 166-67, 238 P.3d 1016 (citing State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009) ).
The question before us turns on the meaning of section 5 of Measure 49, which provides as follows:
"A claimant that filed a claim under [Measure 37] on or before [June 28, 2007] is entitled to just compensation as provided in:
"(1) Section 6 or 7 of this 2007 Act, at the claimant's election, if the property described in the claim is located entirely *651 outside any urban growth boundary and entirely outside the boundaries of any city;
"(2) Section 9 of this 2007 Act if the property described in the claim is located, in whole or in part, within an urban growth boundary; or
"(3) A waiver issued before the effective date of this 2007 Act [ (December 6, 2007) ] to the extent that the claimant's use of the property complies with the waiver and the claimant has a common law vested right on the effective date of this 2007 Act [ (December 6, 2007) ] to complete and continue the use described in the waiver."
For claims, like those at issue here, based on land use regulations enacted before 2007, Measure 49 defines "just compensation" as "[r]elief under sections 5 to 11 of this 2007 Act." Measure 49, § 2(13)(a), codified as ORS 195.300(13)(a) (2007), amended by Or. Laws 2009, ch. 464, § 1.
As noted above, appellants point out that we have held that common law vested rights are "inchoate nonconforming uses" and, consequently, that an ordinance implementing ORS 215.130 can operate to extinguish a vested right "after a period of interruption or abandonment." Fountain Village , 176 Or. App. at 221, 31 P.3d 458 ; ORS 215.130(7).
*276 Based on that holding, appellants reason that ORS 215.130 and the implementing ordinance extinguished claimants' claim under section 5(3) of Measure 49 because, between September 2012 and July 2014, claimants interrupted their pursuit of the determination that they had a vested right to complete construction of their subdivision. Appellants' arguments contain an unspoken assumption-that a claim under section 5(3) is identical to a common law vested rights claim. That assumption is flawed.
A claim described in section 5(3) of Measure 49 is not identical to equitable claims raised on purely common law grounds-for example, the claims at issue in Fountain Village and Clackamas County v. Holmes , 265 Or. 193, 508 P.2d 190 (1973). In that kind of vested rights claim, the common law vested right is the only basis for the claim, so its extinction by operation of ORS 215.130 necessarily disposes of the claim. See Fountain Village , 176 Or. App. at 218, 224, 31 P.3d 458 (when any vested right that previously existed has been extinguished by an ordinance implementing ORS 215.130, the landowner is not entitled to relief).
However, a claim under section 5(3) of Measure 49 is fundamentally different from the type of claim addressed in Holmes .[5] When a landowner brings a vested rights claim under the common law, the question is whether, as an equitable matter under the common law, the landowner should be allowed to finish a partially completed use. See Holmes , 265 Or. at 197, 201, 508 P.2d 190 (citing "[t]he courts and the text writers" as the source of vested rights doctrine). By contrast, section 5(3) creates an independent statutory right to a particular remedy-just compensation-under certain enumerated conditions. Cf. Deckard v. Bunch , 358 Or. 754, 760, 370 P.3d 478 (2016) ("Because the issue is one of legislative intent, the determination of whether an enactment created statutory liability is a matter of statutory interpretation[.]").
*277 As set out above, section 5(3) of Measure 49 provides as follows:
"A claimant that filed a claim under [Measure 37] on or before [June 28, 2007] is entitled to just compensation as provided in * * * [a] waiver issued before the effective date of this 2007 Act [ (December 6, 2007) ] to the extent that the claimant's use of the property complies with the waiver and the claimant has a common law vested right on the effective date of this 2007 Act [ (December 6, 2007) ] to complete and continue the use described in the waiver."
(Emphasis added.) Critically, "just compensation" is defined as "[r]elief under sections 5 *652 to 11 of this 2007 Act." Measure 49, § 2(13)(a). Thus, to the extent that a claimant shows the two required conditions-(1) the use of the property complies with the waiver and (2) the claimant had a common law vested right on December 6, 2007, to complete and continue the use described in the waiver-the claimant "is entitled to" "[r]elief under sections 5 to 11 of this 2007 Act" "as provided in" the waiver. Measure 49, § 5(3).
That text is written in the language of entitlement under the statute; it does not merely note the existence of a vested rights claim under the common law. That is, the claimant "is entitled to" "relief under" "this 2007 Act," and the terms of that relief mirror the terms of the waiver.[6]
The Supreme Court's opinion in Friends II supports that understanding of section 5(3) of Measure 49. There, the court explained that "Measure 49 retroactively invalidated Measure 37 waivers of land use regulations, and landowners, such as [the claimant in that case], who had been proceeding with a development under the authorization of a Measure 37 waiver, could no longer automatically continue to do so. Instead, they had to choose among three pathways," one of which was the vested rights pathway, section 5(3). 351 Or. at 228, 264 P.3d 1265. If section 5(3) merely noted the potential existence of common law claims based on vested rights rather than creating a new statutory right to relief, Measure 49 would not have the effect of invalidating *278 Measure 37 waivers in which there were vested rights. As the opinion in Friends II acknowledges, however, Measure 49 does extinguish all Measure 37 waivers. It replaces them with, among other options, a statutory right under section 5(3). See also Friends II , 351 Or. at 235, 264 P.3d 1265 (noting that "the voters who approved Measure 49 intended to adopt Oregon common law as the standard for identifying a vested right" of the kind required by section 5(3) (emphasis added)).
Thus, section 5(3) of Measure 49 provides a statutory right to relief for Measure 37 claimants to the extent that they meet the two statutory conditions. Unlike a common law claim, which turns on whether the landowner can currently-at the time of the claim-show a vested right to complete the development, a statutory claim under section 5(3) does not inherently require the claimant to show that, at the time of the claim, he or she still has a vested right. Instead, the statute sets out the elements of the claim.
The elements of the statutory claim created by section 5(3) are that (1) the claimant filed a Measure 37 claim before June 28, 2007, (2) the use complies with a waiver issued before December 6, 2007, and (3) on December 6, 2007, the claimant had a common law vested right to complete the use described in the waiver. Thus, if a claimant had established a vested right and then discontinued construction for more than a year before December 6, 2007, we assume, without deciding, that ORS 215.130 and the implementing ordinance could extinguish the vested right and prevent the claimant from showing that he or she had a vested right on December 6, 2007. However, appellants do not explain, and we do not perceive, why a claim under section 5(3) would be affected by ORS 215.130 in a case like this one, where the purported discontinuation of the vested right occurred after December 6, 2007.
The text of section 5(3) unambiguously requires the vested right to have existed "on the effective date of this 2007 Act," that is, on December 6, 2007. Nothing in the text or context suggests that what happens to a claimant's common law vested right after December 6, 2007-including whether it is extinguished after a period of interruption or abandonment-is material to the claim under section 5(3).
*279 We conclude that, if the voters had intended a claim under section 5(3) to require the vested right to exist at some later point-for example, as appellants appear to contend, when the claimant applies for a vesting determination-they would not have specified December 6, 2007, as the single date on which the vested right must exist.
*653 Finally, once a claimant satisfies the conditions stated in the text of section 5(3), nothing suggests that the claimant's statutory right to relief is subject to ORS 215.130. As noted above, that statute provides that a "use" that was lawful "at the time of the enactment or amendment of any zoning ordinance or regulation" "may not be resumed after a period of interruption or abandonment" unless it conforms with the requirements of applicable zoning ordinances or regulations. ORS 215.130(5), (7). In Fountain Village , we held that common law vested rights were subject to an ordinance implementing that statute because they were "inchoate nonconforming uses." 176 Or. App. at 221, 31 P.3d 458.
Unlike the right at issue in Fountain Village , however, a successful claim under section 5(3) yields not an inchoate nonconforming use under the common law but, rather, a development right expressly allowed by statute. Moreover, nothing in the text, context, or legislative history of Measure 49 suggests that the legislature or the voters intended to subject statutory rights under section 5(3) to the strictures of ORS 215.130. Compare Measure 49 § 5 (including no mention of ORS 215.130 ) with Measure 49 § 12(6), codified as ORS 195.310(6) (2007), amended by Or. Laws 2009, ch. 464, § 2 ("A use authorized by this section [ (regarding prospective Measure 37 claims) ] has the legal status of a lawful nonconforming use in the same manner as provided by ORS 215.130. * * * When a use authorized by this section is lawfully established, the use may be continued lawfully in the same manner as provided by ORS 215.130.").
Thus, section 5(3) provides a right to relief under Measure 49 for Measure 37 claimants whose use complies with the waiver and who can show that they had a vested right on December 6, 2007, and it does not make that right subject to ORS 215.130. The text of section 5(3) requires a showing that a claimant's vested right existed on *280 December 6, 2007, and no other date. Consequently, it does not matter whether, sometime after December 6, 2007, claimants' vested rights were extinguished by operation of ORS 215.130 and the implementing ordinance. The circuit court did not err in affirming the county's conclusion that ORS 215.130 did not affect claimants' claim.
We turn to appellants' contention that the circuit court erred in affirming the county's determination that claimants had a vested right to complete and continue a 15-lot subdivision. For our purposes here, the relevant factor in the county's vested rights analysis is the expenditure ratio, which is the ratio between the costs that the landowner incurred to construct the planned development and the estimated cost of constructing the whole planned development. Friends II , 351 Or. at 246, 264 P.3d 1265. That factor "provides an objective measure of how far the landowner has proceeded towards completion of construction and thus serves as an initial gauge of whether the landowner has proceeded far enough that he or she has a vested right to complete construction." Id. at 245, 264 P.3d 1265. To determine the ratio, the county must find "two historical facts: (1) the costs that [the claimant] incurred to construct the planned development and (2) the estimated cost of the planned development." Id. at 246, 264 P.3d 1265.
As explained above, in the vesting determination proceeding that is the subject of this appeal, claimants sought a determination that they had a vested right to complete and continue the 30-lot subdivision that they had pursued since February 2007. The parties did not dispute, and the county implicitly found, that, at least from February 2007 through December 6, 2007, the effective date of Measure 49, claimants planned to construct a 30-lot subdivision.[7] The county found that the total cost of constructing that subdivision-the denominator in the expenditure ratio-would have been $ 8,017,100. The county *654 found that claimants' expenditures toward building the 30-lot subdivision-the numerator in *281 the expenditure ratio-totaled $ 240,422.89. Dividing the numerator by the denominator, the county determined that "the applicants have constructed only three percent (3%) of the total project for a 30-lot subdivision." Considering the relevant case law, the county concluded that that expenditure ratio "is not sufficient under the common law to establish a vested right to complete and continue a 30-lot subdivision."
However, after reaching that conclusion, the county held that claimants "have acquired a vested right to complete and continue 15 lots, each with a dwelling, in the subdivision." The county found that that development would cost approximately half as much as a 30-lot subdivision-$ 4,284,200-and that claimants' expenditures were equally applicable to a 15-lot project. Dividing the numerator by the smaller denominator, the county concluded that claimants had spent 5.61 percent of the total cost of the 15-lot subdivision. Considering that ratio along with the other relevant factors, the county determined that claimants had a vested right to complete and continue a 15-lot subdivision. The circuit court affirmed that determination.
Appellants contend that the county's approach misconstrued the law, and we agree. In Friends II , the Supreme Court explained that the expenditure ratio factor turns on findings of historical fact about the development that a claimant planned, on or before December 6, 2007, to construct. 351 Or. at 246, 264 P.3d 1265. The numerator of the expenditure ratio includes only those expenses "incurred to construct" that development, that is, "the planned development." Id. Consequently, that development-the one that the claimant planned, on or before December 6, 2007, to construct-is the only development that a claimant can have a vested right to complete.
The Supreme Court explained that concept in detail with regard to the type of homes that the claimant intended to construct: "In deciding the cost of building the homes [planned for the development], the county must find what type of homes [the claimant] planned to build." Id. at 246 n. 20, 264 P.3d 1265. If the claimant's plans changed between the time when the claimant "began planning the development" and the relevant date for the ratio factor, namely, December 6, 2007, *282 "then the county must decide whether the change in plans was a bad-faith attempt to thwart Measure 49 or a good-faith response to shifting economic or other conditions." Id. In other words, the county must find, as a matter of historical fact, the details of the development that the claimant had in mind before Measure 49 took effect. That is the development toward which the claimant made expenditures before the change in the law and, consequently, that is the only development that the claimant can have a vested right to complete.
Thus, under the circumstances presented here, to determine what "the planned development" entails, the county had to find how many homes claimants planned, on or before December 6, 2007, to build. In this case, in accordance with the evidence in the record, the county understood that, at all relevant times, claimants intended to build 30 homes. Consequently, under Friends II , a 30-lot subdivision-or, as explained below, perhaps a planned phase of that subdivision-is the project that claimants could have a vested right to complete and continue. The county erred in determining that claimants had a vested right to complete and continue a 15-lot subdivision that they did not intend, on or before December 6, 2007, to construct.
Below, in response to arguments by OSCC and the state that its analysis in that respect was flawed, the county held that, in considering a 15-lot subdivision, it was considering the same proposed development as the 30-lot subdivision in which claimants had sought a vested right, but that claimants had a vested right to complete only part of the development. In support of that reasoning, it cited Friends of Polk County v. Oliver , 245 Or. App. 680, 264 P.3d 165 (2011), rev. den. , 351 Or. 586, 274 P.3d 857 (2012), and Milcrest Corp. v. Clackamas County , 59 Or. App. 177, 650 P.2d 963 (1982), in which we held that landowners had vested rights to complete parts of planned developments.
*655 In each of those cases, however, the landowner intended from the outset to develop the relevant part of the planned development as the first phase of the project, and, consistently with that intention, the vast majority of each landowner's expenditures before the change in the law were *283 allocable to that first phase. Friends of Polk County , 245 Or. App. at 685, 264 P.3d 165 (the claimant showed a vested right to complete development of a 30-acre subarea where the "claimant planned to develop the 137-acre property in phases," "[t]he first phase was [the] approximately 30-acre subarea," and the vast majority of the claimant's expenditures were "allocable to the first phase"); Milcrest Corp. , 59 Or. App. at 182, 183, 650 P.2d 963 (the plaintiff showed a vested right to complete a 440-acre portion of a 660-acre planned development where it initially planned and obtained approval for the 440-acre development and "[t]he vast preponderance" of its expenditures "were exclusively referable to the original 440 acres").
By contrast, here, claimants never planned a 15-lot first or subsequent phase of the project or made expenditures toward that goal.[8] As a result, this case is not like Friends of Polk County or Milcrest Corp. Those cases show that, under some circumstances, a claimant may be able to show a vested right in a planned phase of "the planned development." Friends II , 351 Or. at 246, 264 P.3d 1265. However, a claimant cannot show a vested right in a development or a phase of a development that, on or before December 6, 2007, the claimant did not plan. See id. ; accord. Friends of Polk County , 245 Or. App. at 685, 264 P.3d 165 ; Milcrest Corp. , 59 Or. App. at 182, 183, 650 P.2d 963. Accordingly, the circuit court erred in affirming the county's contrary holding.
Reversed and remanded.

Measure 37 was codified as former ORS 197.352 (2005) and was subsequently amended twice and renumbered as ORS 195.305, all in 2007. Or. Laws 2007, ch. 354, § 28; Or. Laws 2007, ch. 424, § 4.

For a complete description of the complex legal context in which this dispute arose, see Friends of Yamhill County v. Board of Commissioners , 351 Or. 219, 222-25, 264 P.3d 1265 (2011) (Friends II ).

The parts of Measure 49 that address previously filed Measure 37 claims, including section 5, were not codified. Friends I , 237 Or. App. at 153 n. 3, 238 P.3d 1016.

After we issued an opinion in OSCC's appeal, the Supreme Court decided Friends II , in which it explained the legal framework for deciding whether a claimant under section 5(3) of Measure 49 has a common law vested right to complete and continue the use. The court vacated our opinion in this case and remanded for reconsideration in light of Friends II . See Oregon Shores v. Board of County Commissioners , 243 Or. App. 298, 258 P.3d 1269 (2011), vac'd , 351 Or. 541, 273 P.3d 135 (2012). On reconsideration, we reversed and remanded for the circuit court to remand to the county to apply the legal analysis set out in Friends II . Oregon Shores v. Board of County Commissioners , 249 Or. App. 531, 536, 277 P.3d 639 (2012).

The legal test for whether a vested right exists at a given time is the same under section 5(3) of Measure 49 and common law cases like Holmes . Friends II , 351 Or. at 235, 264 P.3d 1265. What is important for our analysis here, however, is that the sources of the claims are different, and Oregon voters merely adopted the existing common law test as one element of the new statutory claim. See id. (noting that "the voters who approved Measure 49 intended to adopt Oregon common law as the standard for identifying a vested right").

Neither sections 6 to 11 nor sections 5(1) or 5(2) of Measure 49 refer to vested rights claims at all, so, for a vested rights claim, "[r]elief under sections 5 to 11 of this 2007 Act" can refer only to the relief provided in section 5(3).

Claimants asserted that they planned and incurred expenses for a 30-lot subdivision; the county understood claimants to argue that they had spent money "to obtain permits in furtherance of a 30-lot subdivision, cleared and graded the Property to support a 30-lot subdivision, drilled wells of sufficient size to support the first phase [ (5 lots) ] of a 30-lot subdivision, and installed internal roads of sufficient size and location to support a 30-lot subdivision." The county agreed.

As explained above, 297 Or. App. at ----, 441 P.3d at ----, claimants planned to complete five lots and dwellings in the first phase of their project. Some of their expenditures were specifically allocable to that phase.